UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADEIA INC., ADEIA MEDIA HOLDINGS INC., ADEIA MEDIA LLC, ADEIA GUIDES INC., ADEIA TECHNOLOGIES INC., and ADEIA MEDIA SOLUTIONS INC., <br><br> Plaintiffs, <br><br> v. <br><br> DIRECTV, LLC, <br><br> Defendant. | Case No.: 1:26-cv-00238-AT <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Adeia Inc., Adeia Media Holdings Inc., Adeia Media LLC, Adeia Guides Inc., Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively, "Adeia" or "Plaintiffs"), bring this action against DIRECTV, LLC ("DIRECTV" or "Defendant") and allege as follows:

## THE PARTIES

1. Plaintiff Adeia Inc. is a Delaware corporation with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134.

2. Plaintiff Adeia Media Holdings Inc. is a Delaware corporation with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Media Holdings Inc. is a wholly owned subsidiary of Adeia Inc.

3. Plaintiff Adeia Media LLC is a Delaware corporation with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Media LLC is a wholly owned subsidiary of Adeia Media Holdings Inc.

1

4.     Plaintiff Adeia Guides Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Guides Inc. is a wholly owned subsidiary of Adeia Media LLC.

5.     Plaintiff Adeia Technologies Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Technologies Inc. is a wholly owned subsidiary of Adeia Media LLC.

6.     Plaintiff Adeia Media Solutions Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134. Adeia Media Solutions Inc. is a wholly owned subsidiary of Adeia Media Holdings Inc.

7.     Defendant DIRECTV, LLC is a California limited liability company with a principal place of business at 2260 E Imperial Hwy, El Segundo, CA 90245-3504.

## JURISDICTION AND VENUE

8.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1367.

9.     Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and the Defend Trade Secrets Act of 2016 (18 U.S.C § 1836, *et seq*.).

10.    Subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1367(a) because all of the claims are a part of the same case or controversy under Article III of the United States Constitution.

11.    As described herein, this Court has specific personal jurisdiction over DIRECTV because it conducts regular business in and has substantial contacts with the State of New York, including certain of the actions complained of herein. Additionally, DIRECTV entered into an agreement dated April 10, 2025 [REDACTED]

12. As described herein, venue in this District is proper under 28 U.S.C. § 1391 at least because a substantial part of the acts or omissions giving rise to this complaint occurred in the District and ███████████████████████████████████████████████████████.

## BACKGROUND

13. Plaintiff Adeia Inc. is a publicly traded company listed on NASDAQ (ADEA).

14. Adeia invents, develops, and licenses, among other things, fundamental technology that shapes the way millions of people explore and experience entertainment; its innovations enhance billions of devices in an increasingly connected world.

15. Adeia presently owns over 13,000 patents and patent applications worldwide.

16. Adeia's history of innovation stretches back over 30 years through its predecessor companies such as United Video, Gemstar, TiVo, Macrovision, Rovi, and MobiTV.

17. Like its predecessors, Adeia remains committed to technological innovation. Adeia spends tens of millions of dollars per year on research and development. These efforts have contributed to the continued growth of Adeia's patent portfolio. In the past several years alone, Adeia's inventors have participated in over thirty joint research partnerships with R&D organizations and academic institutions across the globe.

18. Through its licensing program, Adeia places the many valuable innovations represented in its patent portfolios in the hands of consumers via the products and services offered by its licensing partners.

19. The identities of the companies who have chosen to become and remain Adeia licensees stand as a testament to the value of the technology Adeia offers. For example, top U.S. pay-TV providers, streaming giants and hardware manufacturers such as AT&T, Verizon, Cox Communications, Comcast, DISH, Spectrum, Frontier, Google (YouTube, YouTube TV),

Paramount (Paramount+, Pluto TV), Disney (Disney+, ESPN, Hulu), Sony, TCL, Roku, and Samsung have licensed Adeia's media patent portfolio.

20. For more than two decades, DIRECTV, through itself or through its corporate affiliates, was a licensee of Adeia, its corporate affiliates, or its corporate predecessors.

21. DIRECTV's most recent license to Adeia's media patent portfolio expired on December 31, 2025.

22. Leading up to the expiration of DIRECTV's license, Adeia and DIRECTV engaged in business discussions regarding whether DIRECTV would renew its license to Adeia's media patent portfolio.

23. In connection with those discussions, Adeia Media Holdings and DIRECTV entered a Mutual Non-Disclosure Agreement, dated April 10, 2025 (the "NDA"). The NDA is attached as Exhibit A. Adeia Media Holdings and DIRECTV entered into the April 10, 2025 NDA after DIRECTV requested information that Adeia declined to share without an NDA in place.

24. On December 29, 2025, DIRECTV violated that NDA. Specifically, DIRECTV filed a declaratory judgment action in the Northern District of California, *DirecTV LLC v. Adeia, Inc. et al.*, 3:25-cv-11048 (N.D. Cal. 2025).

25. In filing that complaint, DIRECTV performed actions that violated the parties' April 10, 2025 NDA.

26. The NDA defines ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ April 10, 2025 NDA ¶ 1 (first emphasis added, second and third emphasis in original). ███████ is defined as ███████

4

██████████████████████████████████████████████████

██████████████████████████████████ *Id.* The NDA expressly contemplates that ████████

██████████████████████████████████████████████████

█████████████████████████████████████████ *Id.*

27. The NDA prohibits the parties ████████████████████████████████

██████████████████████████████████

████████████████ April 10, 2025 NDA ¶ 3 (emphasis added). The NDA further expressly prohibits DIRECTV from ████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████ such as the one DIRECTV filed on December 29, 2025. However, the definition of ██████████████████████████████

█████████████████████████████████████████.

28. DIRECTV used Confidential Information, as defined, to prepare its December 29, 2025 Declaratory Judgment Action.

29. Adeia has over 4,000 issued U.S. patents within its media portfolio. Prior to expiration of its license, DIRECTV had a license to the entire media portfolio.

30. After signing the NDA, Adeia drew DIRECTV's attention to ████████. Pursuant to the NDA, Adeia provided its own confidential internal analysis of ████████████ ██████████████████████████████████████████████████. DIRECTV knew about ██████████████████████████████████████ only because Adeia shared this information pursuant to the NDA.

5

31. This confidential analysis of ███████████████████████████████ ███████████████████. These materials spanned hundreds of pages of Adeia's confidential analysis.

32. Adeia also provided confidential analysis in the form of ███████████████ ███████████████████████████████████████████ The ███████████████ also identifies ███████████████████████████████████████████ ███████████████████████████.

33. Adeia also shared confidential licensing information in its business discussions with DIRECTV.

34. In response to Adeia's confidential analysis provided concerning these ████████, DIRECTV prepared ███████████████████████████████████. The ████ was authored by Sharon L. Davis of the Rothwell, Figg, Ernst & Manbeck law firm. Ms. Davis is also on the signature block of the complaint for DIRECTV's Declaratory Judgment Action.

35. ███████████████████████ discusses ███████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████.

36. The ███████████████████████ confirms that it was written with reference to Adeia's Confidential Information. The ████ references ███████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████.

37. The ████ otherwise repeatedly references other documents—the documents setting forth Adeia's confidential internal analysis—in the text of the ████ itself. These documents were

also marked ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Indeed, the structure of the ▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

38. Adeia provided additional confidential information in response ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ including responding to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and providing updated analysis ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Specifically, ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

39. DIRECTV's Declaratory Judgment Action tracks ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬.

40. For each count seeking a declaratory judgment of non-infringement, DIRECTV's Declaratory Judgment Action presents ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ That is the only non-

infringement position identified as to the '010 Patent in DIRECTV's Declaratory Judgment Action.

41. This scenario is the same for each of the six remaining non-infringement counts in DIRECTV's Declaratory Judgment Action. The only non-infringement position identified is ███████████████████████████████.

42. ███████████████████████████████████████████████████████████████████████████████████████.

43. The remaining three patents in DIRECTV's Declaratory Judgment Action ██ ███████████████████████████████ pursuant to the April 10, 2025 NDA.

44. On information and belief, DIRECTV used ███████████████████ ███████████████████████████████████████ in the Declaratory Judgment Action.

### COUNT 1: MISAPPROPRIATION OF TRADE SECRETS PURSUANT TO THE DEFEND TRADE SECRETS ACT ("DTSA")

45. Adeia incorporates the allegations of all of the foregoing and subsequent paragraphs as if fully restated herein.

46. Adeia's selection and identification of ████████████ and its internal analysis ██████████████████████████ are protectable trade secrets.

47. Adeia has spent significant resources in the form of time and money to analyze its extensive patent portfolio and its ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████. Specifically, Adeia and its agents invested hundreds of hours creating ████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████.

8

48. Adeia's internal analysis in developing ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ each derive independent economic value from not being generally known or readily ascertainable.

49. Some ways that these trade secrets derive economic value from not being known or readily ascertainable are set forth in the following paragraphs.

50. Without this information, it is unlikely a litigant like DIRECTV would have filed a declaratory judgment action. Without ████████████████████████████ under the NDA, DIRECTV would have had to guess which patents to include in any declaratory relief action against Adeia. Filing a declaratory relief action on thousands of issued U.S. patents would be impractical, if not impermissible. Without access under the NDA ████████████ ████████████████████████, DIRECTV would have had no realistic way of selecting the ten specific patents it included in its Declaratory Judgment Action. Accordingly, while DIRECTV's Declaratory Judgment Action remains jurisdictionally deficient, keeping the identity of ████████████ a secret as well as keeping the internal analysis of ████████████ a secret provides independent economic value in the form of an avoided lawsuit and avoided litigation costs. Adeia has not yet determined whether filing its own district court patent infringement action against DIRECTV is warranted, or which specific patents it may assert in any such action. Moreover, simply as a matter of practical reality, it is unlikely that Adeia's own district court patent infringement action (were one to be filed) would have included as many patents (10) as are included in DIRECTV's Declaratory Judgment Action.

51. Adeia Inc. is also a publicly traded company. Knowledge of Adeia's internal ████████████████████████████████████████████ could also provide a motivation to other

entities (e.g., short-sellers, investors in DIRECTV, or investors in other entities in the relevant industry with similar products or services) to otherwise seek to invalidate or otherwise attack ███ ███. This provides independent economic value at least because ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

52. Beyond the specific risk of entities—both DIRECTV or others—attacking or seeking to invalidate ███████████, these trade secrets have independent economic value from their secrecy because it works to avoid entities, like DIRECTV through its Declaratory Judgment Action, tying up ███████████ in litigation and posing litigation risk. Generally, entities engaging in licensing discussions discount immediate value of assets tied up in litigation as those entities prefer to take a wait-and-see approach to the outcome of that litigation rather than voluntarily licensing those assets which are subject to existing litigation risk.

53. Furthermore, keeping ███████████████ and the internal analysis of ███ ███ a secret creates economic value from their secrecy because DIRECTV or other industry participants could attempt to use that information in current or future licensing negotiations to negotiate a license on terms that are more favorable to the licensee. For example, entities might make ████████████████████████████ more difficult to find in publicly available sources. Those entities might promote ████████████████████████████████ ███ less to suggest that those features are less valuable to their business and thus do not justify Adeia's requested licensing fee. Entities might seek to implement alternative technologies from less sophisticated companies who accept less than fair value for those technologies and license those alternative technologies rather than Adeia's technologies to the detriment of Adeia.

Although such entities could theoretically engage in such actions by looking up Adeia's patents in public databases, analyzing Adeia's extensive portfolio, identifying patents that are particularly relevant, and then analyzing whether or to what extent to engage in the actions identified above, that would be a highly resource intensive, cost-prohibitive undertaking. Keeping ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a secret ensures that industry participants cannot seek to advantage their licensing position with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

54.   None of these secrets are readily ascertainable through proper means. The identification of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ reflected significant efforts and analysis from Adeia.

55.   Moreover, even if someone could theoretically have similarly identified ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it is not readily ascertainable that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

56.   Similarly, Adeia's internal analysis of ▮▮▮▮▮▮▮▮▮ is not readily ascertainable. Adeia compiled information reflecting significant analysis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Although that compilation includes some publicly available information, it is not readily ascertainable that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.

57.   Adeia has taken reasonable steps to maintain the secrecy of these trade secrets. Adeia only shared ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with DIRECTV under NDA, and ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with DIRECTV under that NDA.

11

58. Adeia shared ███████████████ only through a secure, password-protected link. Adeia generally keeps any internal analysis of its portfolio, ███████████████████████████, on its own secure servers or on other secure storage. Only certain employees on a need-to-know basis know where the information on these secure servers is kept or have been granted permission to access the information. Generally, Adeia keeps information like the identified trade secrets in secure Box folders, and not every employee at Adeia has access to every secure Box folder.

59. DIRECTV misappropriated these trade secrets at least by using them to prepare DIRECTV's Declaratory Judgment Action without Adeia's express or implied consent. Specifically, DIRECTV used a combination of ████████████████████████████████████████████████████████████████████████████████████████████████████████████ to prepare its December 29, 2025 Declaratory Judgment Action. DIRECTV used these trade secrets at least by ████████████████████████████████████████████████████████████████, ██████████████████████████████████████.

60. DIRECTV acquired these trade secrets from Adeia with an obligation—arising from the parties' negotiations and the April 10, 2025 NDA—to maintain their secrecy and limit DIRECTV's use of those secrets. Adeia never consented to DIRECTV's use of these trade secrets to file its Declaratory Judgment action. To the contrary, Adeia ensured that DIRECTV expressly

agreed in the April 10, 2025 NDA ███████████████████████████████████████

███████████████████████

61. Adeia has suffered damages as a result of DIRECTV's misappropriation, including by having to defend against DIRECTV's improperly filed Declaratory Judgment Action.

62. DIRECTV's actions were willful and malicious. DIRECTV knew about the NDA and knew that a main purpose of the NDA was so Adeia could share its trade secret information with DIRECTV without the risk of DIRECTV filing a lawsuit using that information. DIRECTV used them to file a lawsuit anyway.

## COUNT 2: BREACH OF CONTRACT

63. Adeia incorporates the allegations of all of the foregoing and subsequent paragraphs as if fully restated herein.

64. Adeia has a valid enforceable contract with DIRECTV through the April 10, 2025 NDA.

65. The April 10, 2025 NDA remains in force and Adeia has performed all obligations under the agreement.

66. DIRECTV breached that contract.

67. Specifically, DIRECTV (itself and through its Representatives) ███████

████████████████████████████████████████████████████████████████

███████████████████████. April 10, 2025 NDA ¶¶ 3(a), 3(b). Using Adeia's Confidential Information to file its December 29, 2025 Declaratory Judgment action against Adeia was not ██████████████ the April 10, 2025 NDA and it is not ██████████████ by the NDA.

13

68. DIRECTV has not ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ April 10, 2025 NDA ¶ 3(f), as it has not withdrawn the improper December 29, 2025 Declaratory Judgment Action ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

69. DIRECTV's failure to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ constitutes a material breach of the NDA.

70. DIRECTV (itself and through its Representatives) also ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ April 10, 2025 NDA ¶ 6.

71. DIRECTV (itself and through its Representatives) used Adeia's Confidential Information to prepare its Declaratory Judgment action.

72. For example, DIRECTV's Representatives Sharon L. Davis and the Rothwell, Figg, Ernst & Manbeck law firm used Adeia's Confidential Information to prepare DIRECTV's Declaratory Judgment action.

73. DIRECTV's (itself and through its Representatives) use of Adeia's Confidential Information to prepare its Declaratory Judgment action constitutes a material breach of the NDA.

74. The Adeia Confidential Information DIRECTV used ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Adeia's Confidential Information was not ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

75. Adeia has suffered damages as a result of DIRECTV's breach. For example, Adeia has suffered damages by being forced to defend against an improper declaratory judgment action. Moreover, Adeia was forced to file this Action to enforce its rights under the NDA.

76. This is harm expressly contemplated under the contract. For example, the agreement states ███████████████████████████████████████████████████████████████████████████████████ April 10, 2025 NDA ¶ 10.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a. a judgment in favor of Adeia that DIRECTV, LLC misappropriated Adeia's trade secrets in violation of the DTSA;

b. a judgement finding that DIRECTV, LLC's misappropriation of trade secrets was willful and malicious;

c. a judgment finding that DIRECTV, LLC breached the April 10, 2025 NDA.

d. a judgment and order requiring DIRECTV, LLC to pay Adeia its damages, cost, expenses, attorneys' fees, and/or any punitive or enhanced damages to which Adeia is entitled for DIRECTV's wrongdoing;

e. a judgment finding that Adeia is the prevailing party.

f. a preliminary and permanent injunction prohibiting DIRECTV, LLC and any of its officers, directors, agents, servants, subsidiaries, affiliates, divisions, branches, parents, and/or those in association with them from further misappropriating, maintaining, using, and/or benefiting from the trade secrets other than for the Purpose, as defined in the April 10, 2025 NDA. The requested injunction shall include at least an injunction from further use of the trade secrets for the purpose of, as the basis for, or in support of the Declaratory Judgment Action.

g. a preliminary and permanent injunction prohibiting DIRECTV, LLC and any of its officers, directors, agents, servants, subsidiaries, affiliates, divisions, branches,

    parents, and/or those in association with them from further use of Adeia's Confidential Information other than for the Purpose, as defined in the April 10, 2025 NDA. The requested injunction shall include at least an injunction from further use of the Confidential Information for the purpose of, as the basis for, or in support of the Declaratory Judgment Action.

h. a preliminary and permanent injunction directing DIRECTV, LLC and any of its officers, directors, agents, servants, subsidiaries, affiliates, divisions, branches, parents, and/or those in association with them to cease its prosecution of its December 29, 2025 Declaratory Judgment action, *DIRECTV LLC v. Adeia, Inc. et al.*, 3:25-cv-11048 (N.D. Cal. 2025).

i. any and all other relief as the Court may deem equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands trial by jury on all claims and issues so triable.

DATED: January 8, 2026                    Respectfully submitted,

*/s/ Jonathan P. Bach*
Jonathan P. Bach
**SHAPIRO ARATO BACH LLP**
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Telephone: (212) 257-4897
jbach@shapiroarato.com


Bradley W. Caldwell (*pro hac vice* forthcoming)
New York State Bar No. 5197546
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady (*pro hac vice* forthcoming)
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry (*pro hac vice* forthcoming)
New York State Bar No. 5178066
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Brian D. Johnston (*pro hac vice* forthcoming)
New York State Bar No. 4731774
Texas State Bar No. 24080965
Email: bjohnston@caldwellcc.com
R. Seth Reich Jr. (*pro hac vice* forthcoming)
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
John F. Summers (*pro hac vice* forthcoming)
Texas State Bar No. 24079417
jsummers@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

*Attorneys for Plaintiffs Adeia Inc., Adeia Media Holdings Inc., Adeia Media LLC, Adeia Guides Inc., Adeia Technologies Inc., and Adeia Media Solutions Inc.*