UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADEIA INC., ADEIA MEDIA HOLDINGS INC.,
ADEIA MEDIA LLC, ADEIA GUIDES INC.,
ADEIA TECHNOLOGIES INC., and ADEIA
MEDIA SOLUTIONS INC.,

                          Plaintiffs,

          -against-

DIRECTV, LLC,

                          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/2/2026_____

26 Civ. 238 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On January 16, 2026, Plaintiffs, (collectively, "Adeia"), filed a proposed order to show cause without emergency relief, seeking a preliminary injunction preventing DirecTV, LLC ("DirecTV"), the defendant in this action, from "prosecuting" a separate declaratory judgment action initiated in the United States District Court for the Northern District of California.  *See* Proposed OTSC, ECF No. 21; Mem., ECF No. 45.[1]  For the reasons stated below, the Court DENIES Adeia's motion.

**BACKGROUND**

This action was commenced on January 12, 2026, when Adeia, an entertainment technology company which owns and licenses over 13,000 patents, sued DirecTV, a former licensee of certain Adeia patents, asserting claims for breach of contract and misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*  *See* Public Compl. ¶¶ 13–15, 20–21, 45–76, ECF No. 1.[2]  The dispute arises out of a non-disclosure agreement ("NDA") dated April 10, 2025, which the parties executed when they were negotiating the terms of DirecTV's potential renewal of its

---

[1] Although Adeia filed a memorandum of law in support of its proposed order on January 16, *see* ECF No. 22, it later submitted a revised memorandum that sought to redact less information from the public docket than its original memorandum at ECF No. 45.  *See* ECF No. 43 (explaining revisions); ECF No. 44 (memorandum with redactions).  The Court will refer exclusively to the revised memorandum.

[2] The unredacted complaint was filed under seal and is maintained by the Court at ECF No. 3.  Permission to file the unredacted complaint under seal was granted at ECF No. 3 in *Adeia Inc. v. DirecTV*, No. 26 Misc. 11 (S.D.N.Y.).

licenses to certain patents in Adeia's portfolio.  *Id.* ¶¶ 22–24; *see also* NDA, ECF No. 26-2.[3]  The

NDA prohibited both parties from using confidential information (as defined in the NDA) "for the

purpose of, as the basis for, or in support of, any [l]egal [a]ction between the parties."  NDA § 6.

Confidential information was defined as "any information disclosed or made available by a

party . . . under this Agreement . . . in furtherance of the [contemplated business transactions between

the parties], . . . including" information concerning patent numbers, patent ownership, and patent

analysis.  *Id.* § 1.

On day after the parties signed the NDA, Adeia emailed to DirecTV a PowerPoint

presentation which identified 40 patents as potentially of interest to DirecTV's services, and 40

"claim charts."  *See* Mem. at 2–3; ECF No. 26-3 (email).  The claim charts provide a detailed

explanation of how a given Adeia patent might apply to a certain technology or service that DirecTV

uses in its business.  *See* ECF No. 26-5 (charts).  The PowerPoint slides and the claim charts are

marked "Adeia Confidential."  *Id.*  By letter dated September 17, 2025, DirecTV's outside counsel

responded, stating that its "review of [the claim charts provided by Adeia] leads it to conclude" that at

least seven of the identified patents were not infringed by DirecTV's services.  ECF No. 26-6 (letter);

*see* Mem. at 3.  The parties ultimately did not renew DirecTV's license, which expired on December

31, 2025.  Mem. at 2.

On December 29, 2025, DirecTV filed a declaratory judgment action (the "DJ action") in the

Northern District of California.  *See DirecTV LLC v. Adeia, Inc. et al.*, No. 3:25-cv-11048 (N.D. Cal.)

(compl. filed Dec. 29, 2025).  In that action, DirecTV sought declarations of non-infringement and

invalidity for 10 patents owned by Adeia.  *See* Mem. at 3–4; Opp. at 1.  All 10 patents had been

included in Adeia's selection of the 40 of-interest patents, and all 7 patents analyzed in DirectTV's

---

[3] Having reviewed the totality of the record, the Court recounts a procedural and factual history solely for the purpose of contextualizing its ruling on Adeia's proposed preliminary injunction; except where expressly stated, this procedural history should not be considered to constitute findings of fact.

September 2025 letter were included in the action.  *See* Mem. at 4.  Adeia filed a motion to dismiss for lack of subject matter jurisdiction in the DJ action on March 13, 2026, and that motion remains pending.  *See* ECF Nos. 38, 53 in *DirecTV LLC v. Adeia, Inc. et al.*, No. 3:25-cv-11048 (N.D. Cal.).

Adeia alleges that DirecTV breached the NDA and misappropriated Adeia's trade secrets by filing the DJ action.  *See generally* Compl.  Adeia asks the Court to enter a preliminary injunction prohibiting DirecTV from continuing to pursue the DJ action.  Adeia's motion discusses only its breach of contract claim, arguing that it has a strong likelihood of success on the merits on that cause of action, and does not address its DTSA claim.  *See* Mem. at 7–8.  Accordingly, the Court shall address only the breach of contract cause of action.

## LEGAL STANDARD

### I.    Preliminary Injunction

In order to obtain a preliminary injunction, a party must demonstrate: (1) "irreparable harm," (2) "either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party," and (3) that a preliminary injunction "is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Federation*, 883 F.3d 32, 37 (2d Cir. 2018).  When a preliminary injunction alters the status quo, a party must "meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'"  *Id.* at 37 (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

The parties dispute whether Adeia's preliminary injunction would alter the status quo and should therefore be subject to a heightened standard.  *See* Mem. at 6 n.2; Opp. at 12.  Although entering Adeia's injunction would alter the state of the DJ action, and potentially require DirecTV to dismiss the action, *see* Opp. at 12, the Second Circuit has clarified that the "status quo" for purposes of a preliminary injunction is the "last actual, peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League*, 883 F.3d at 37 (quoting *Mastrio v. Sebelius*, 768 F.3d

3

116, 120 (2d Cir. 2014)).  In other words, where the current status quo is "precipitated" by the defendant's alleged "wrongdoing," a court should consider the status quo to be the state of the dispute between the parties prior to that alleged wrongdoing.  *Id.* at 32 n.5 (citing *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983) for the proposition that the reinstatement of terminated benefits constitutes restoration of the status quo *ante*).  Because DirecTV's filing of the DJ action is the alleged wrongdoing, the Court agrees with Adeia that its preliminary injunction seeks restoration of the status quo *ante*, and therefore, should be subject to the ordinary preliminary injunction standard.  *See* Mem. at 6–7 & n.2.

## II.      Sealing

With respect to sealing filings, the public enjoys a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  This presumption of public access "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1048 (2d Cir. 1995)).  When a party moves to seal documents, it "bears the burden of showing that higher values overcome the presumption of public access." *Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, No. 24 Misc. 269, 2024 WL 4169353, at *2 (S.D.N.Y. Sept. 12, 2024) (quoting *Kewazinga Corp. v. Google LLC*, No. 20 Civ. 1106, 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024)).

Courts conduct a three-step analysis when evaluating a sealing request.  First, a court determines whether the relevant material constitutes a "judicial document," *i.e.*, a document that is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo ("Amodeo I")*, 44 F.3d 141, 145 (2d Cir. 1995)).  The relevance of a document does not depend on "which way the court ultimately rules or whether the

document ultimately in fact influences the court's decision," but rather on whether the document "would reasonably have the *tendency* to influence a district court's ruling on a motion." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis in original).

If material constitutes a "judicial document," the "common law presumption of access attaches," and a court must evaluate the "weight of that presumption." *Lugosch*, 435 F.3d at 119. "[T]he presumption of public access is at its highest when the material is relevant to a court's decision on a dispositive motion." *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2022 WL 329211, at *1 (S.D.N.Y. Feb. 3, 2022). The presumption is "weaker where the 'documents play only a negligible role in the performance of Article III duties.'" *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (quoting *Amodeo II*, 71 F.3d at 1050).

Under the common law framework, a court must balance the weight of the presumption against "competing considerations," including "the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050). Such privacy interests may include protecting against the disclosure of "sensitive, confidential, or proprietary business information," *Ripple*, 2022 WL 329211, at *1, or of private settlement communications, *see Liu v. Nielsen Co. (US) LLC*, No. 22 Civ. 9084, 2023 WL 3750116, at *2 (S.D.N.Y. June 1, 2023). "[B]argained-for confidentiality" through vehicles like protective orders will not, however, overcome the presumption of public access. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018).

There is also a First Amendment right of access to documents filed in connection with the Court's consideration of a pretrial motion. *See Lugosch*, 435 F.3d at 121, 126. Where the First Amendment right of access attaches, sealing "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* at 124.

**ANALYSIS**

I.      Sealing Motion

First, the Court addresses the parties' various sealing requests.  The parties seek to seal their memoranda of law and a number of supporting exhibits with respect to Adeia's preliminary injunction motion.  *See* Mem. Sealing Mot., ECF No. 24; Opp. Sealing Mot., ECF No. 34; Reply Sealing Mot., ECF No. 46; Rev. Mem. Sealing Mot., ECF No. 43.[4]

Adeia has also filed under seal a declaration of John F. Summers, one of Adeia's attorneys in this action.  *See* Summers Decl., ECF No. 26.  Because this document characterizes and details the documents submitted in support of Adeia's preliminary injunction motion, it is a judicial document. Adeia does not explain why the declaration itself, which merely identifies the documents submitted in support of its preliminary injunction motion, contains information which would harm Adeia's business interests and requires sealing.  Because the identity of the documents submitted in support of Adeia's motion is highly relevant to the Court's consideration of the motion and there are no higher values justifying sealing, the Summers Declaration shall be unsealed.

Next, Adeia seeks to seal each exhibit filed with the declaration at ECF No. 26, which it labels Exhibits B–J.  Adeia argues that the exhibits reveal the terms of the "confidential NDA" and "the parties' confidential discussions."  Mem. Sealing Mot. at 2.  Again, Adeia does not explain why the confidential information contained in these exhibits is sensitive, aside from stating that the information is "important to Adeia," "protected by the parties' NDA," and would be "damaging" if disclosed to the public.  *Id.*

The mere fact that the parties have agreed that information is confidential does not justify sealing.  *See Bernsten*, 307 F. Supp. 3d at 168; *Johnson as Tr. of Johnson Fam. Tr. v. Saba Cap.*

---

[4] The revised sealing motion concerning Adeia's memorandum explains that the parties met and conferred and agreed to remove a narrow set of redactions that were previously made to Adeia's memorandum in support of its motion.  The letter reports that Adeia "removed the redactions from the first and third columns of the table on pages 4–5" of its memorandum.  *Compare* ECF No. 25 (initial memorandum) *with* Mem.

6

*Mgmt., L.P.*, No. 22 Civ. 4915, 2022 WL 8024206, at *2 (S.D.N.Y. Oct. 14, 2022) (holding that conclusory statements that documents contain confidential business information are insufficient to warrant sealing).  However, to the extent that the documents do, in fact, provide "detailed insight into Adeia's licensing practices," Mem. Sealing Mot. at 3, such as "research and development information, marketing plans, revenue information, pricing information, and the like," sealing is justified.  *Kewazinga*, 2021 WL 1222122, at *6 (citation omitted).

Mindful of these observations, the Court considers each exhibit in turn.  Exhibit B, filed at ECF No. 26-1, is an email chain containing a series of licensing renewal discussions between Adeia and DirecTV.  The emails discuss licensing renewal rates and would provide the public an insight into both Adeia and DirecTV's licensing practices and contemplated business decisions.  Therefore, it should remain sealed as sensitive business information.  However, because the email chain also reveals the scope of the efforts the parties undertook to negotiate the NDA, the Court may reconsider the need for sealing certain portions of this document at a later stage in the litigation, if the negotiations regarding the NDA itself become relevant and the public's interest in this information outweighs countervailing interests.  *See Brown*, 929 F.3d at 50.

Exhibit C, filed at ECF No. 26-2, is the NDA.  The text of the NDA is the entire basis of Adeia's preliminary injunction motion and is, therefore, a highly relevant judicial document.  The public could not understand this opinion without the ability to review the NDA's various provisions. Adeia merely asserts that the NDA contains confidential information to support its sealing request, but does not explain how public disclosure of the NDA, especially the sections relevant to this Court's opinion, would harm its other licensing discussions (except, of course, to say that disclosure of confidential information is *per se* harmful, *see* Sealing Mot. at 2).  The agreement does not reveal information about Adeia's pricing or the parties' business practices.  Accordingly, the Court orders the NDA unsealed.

Exhibits D, E, F, and H, filed at ECF Nos. 26-3, 26-4, 26-5, and 26-7, respectively, are an email, a PowerPoint presentation, and two claim charts prepared by Adeia and sent to DirecTV. The PowerPoint presentation analyzes the breadth of Adeia's patent portfolio, and the claim charts provide detailed legal analysis concerning the application of Adeia's patents to DirecTV's services. The documents are judicial documents, *see Brown*, 929 F.3d at 50–51, but although the description of these documents is relevant to the Court's decision, the information contained therein—the identification of DirecTV's business practices, Adeia's overall patent portfolio, and Adeia's legal analysis concerning the application of its patents—would reveal sensitive business information concerning Adeia's internal legal analysis and business practices related to licensing. Accordingly, Exhibits D, E, F, and H shall remain sealed.

Exhibit G, filed at ECF No. 26-6, is DirecTV's September 17, 2025, letter to Adeia which identifies certain Adeia patents and explains DirecTV's positions on non-infringement. Again, the description of the letter—the fact that it sets out non-infringement positions on patents previously identified by Adeia, and the fact that its positions are substantially similar to arguments raised in the DJ action—are relevant facts, but the particular analysis contained therein would reveal sensitive business information disclosed during the course of negotiations. Accordingly, Exhibit G shall remain sealed.

Exhibits I and J, filed at ECF Nos. 26-8 and 26-9, respectively, are letters exchanged between the parties concerning the DJ action filed in California. Although they are marked confidential, the letters do not contain any business information related to pricing, negotiations, or Adeia's patent portfolio—they merely foreshadow the claims the parties have raised in this lawsuit. Therefore, the documents, as judicial documents, shall be unsealed.

The redactions presented in the parties' memoranda of law, which are "unquestionably" judicial documents, *see Lugosch*, 435 F.3d at 121, 123, are related to each of these documents. The

redactions, generally, consist of descriptions or quotations from the NDA and descriptions of the exhibits filed along with the declaration of ECF No. 26. The Court finds that sealing of the following portions of the memoranda are not warranted: (1) any portions which cite to, quote from, or mention the NDA; (2) any portions which cite to, quote from, or mention the documents filed at ECF Nos. 26, 26-8, and 26-9; (3) any portions which characterize at a high level, but do not discuss the legal analysis and business service information contained in the sealed documents at ECF Nos. 26-1, 26-3, 26-4, 26-5, 26-6, and 26-7.

II.      Preliminary Injunction Motion

        A.  Irreparable Harm

The Court concludes that Adeia is not entitled to a preliminary injunction because it has not shown irreparable harm. *See N. Am. Soccer League*, 883 F.3d at 37.[5] Adeia contends that DirecTV's lawsuit threatens to cause it irreparable harm by "depriv[ing] [Adeia] of its bargained-for right to not face a lawsuit filed using information [shared under the NDA]." Mem. at 9. Adeia further argues that DirecTV's lawsuit has forced it to "litigate any live infringement allegations" in the forum that DirecTV chose, the Northern District of California, rather than the forum of Adeia's choosing because Adeia's infringement claims would be compulsory counterclaims. *Id*.; *see also Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) (holding that an infringement claim is a compulsory counterclaim in a declaratory judgment action seeking a declaration of non-infringement). Last, Adeia contends that the DJ action has "given the public a glimpse of Adeia's confidential information that Adeia can never undo." Mem. at 9.

None of these alleged harms are irreparable. First, that Adeia's contractual rights were "bargained-for" does not make a breach of those rights any different than a routine breach of contract

---

[5] Because Adeia has not shown that it will be irreparably harmed absent a preliminary injunction, the Court need not consider whether Adeia has shown a likelihood of success on the merits. *See N. Am. Soccer League*, 883 F.3d at 37.

action. And in such an action, the proper remedy is typically money damages. *See Home Life Health Care, LLC v. Dorfman*, No. 25 Civ. 526, 2025 WL 2721618, at *6 (E.D.N.Y. Sep. 24, 2025). Adeia's invocation of § 10 of the NDA, which states that the parties agree that "[a]ny actual or threatened breach of [the NDA] may cause immediate and irreparable harm" glosses over that phrase's use of the word "may." That section only suggests that some breaches, but not all, will potentially cause either party irreparable harm. Accordingly, the Court must examine the actual breach alleged to determine whether that breach is likely to cause Adeia irreparable harm.

Adeia argues that it has shown irreparable harm because the DJ action has forced Adeia to litigate infringement and validity in DirecTV's chosen forum, the Northern District of California. *See, e.g.*, Mem. at 9 (noting that Adeia's infringement claims against DirecTV are compulsory counterclaims in the DJ action). Adeia's sole support for this proposition is *General Protecht Group, Inc. v. Leviton Manufacturing Co.*, 651 F.3d 1355 (Fed. Cir. 2011), an inapposite and nonbinding case. In *General Protecht*, the Federal Circuit affirmed a grant of a preliminary injunction entered to enforce a forum selection clause in a settlement agreement between two parties. *Id.* at 1357. In that case, the parties had executed a settlement agreement resolving an infringement lawsuit concerning two patents. *Id.* One party, Leviton, then filed a complaint several years after the earlier lawsuit had settled, asserting infringement claims for two patents related to patents involved in the earlier lawsuit. *See id.* at 1358. The other party, General Protecht Group, then filed a separate action in the District of New Mexico asserting non-infringement and related claims and moved for a preliminary injunction to enforce the forum selection clause in the first lawsuit's settlement agreement, contending that an argument raised in Leviton's newer lawsuit had "triggered the forum selection clause" from the agreement. *Id.* The Federal Circuit held that General Protecht would be irreparably harmed in the absence of a preliminary injunction because "it would be deprived of its bargained-for forum and because it would likely be forced to litigate the same issues on multiple fronts." *Id.* at 1363–64.

Neither justification in *General Protecht* applies here.  First, unlike the settlement agreement in *Leviton*, the NDA does not reflect that the parties have chosen a particular forum to litigate the infringement and invalidity claims raised in the DJ action.  The NDA's forum-selection clause only states that the NDA "is to be governed by the laws of the State of New York" and that "[a]ny disputes or claims alleging breach of [the NDA] or relating to the interpretation of [the NDA]" are subject to the exclusive jurisdiction of New York courts.  NDA § 10.  The NDA says nothing about what forum must decide any infringement or invalidity claims which may relate to confidential information: indeed, no claim raised in the DJ action alleges breach of the NDA or even "relat[es] to the interpretation of" the NDA.  *See, e.g.*, ECF No. 1 in *DirecTV LLC v. Adeia, Inc. et al.*, No. 3:25-cv-11048 (N.D. Cal.) (complaint) (failing to contain any reference to the NDA).

Second, Adeia is not forced to "litigate the same issues on multiple fronts" because of the DJ action.  *General Protecht*, 651 F.3d at 1363.  This action concerns a claim for breach of contract and a violation of the Defend Trade Secrets Act; it does not involve the validity of any Adeia patents, nor does it concern the question of whether DirecTV's services infringe on any of those patents.  *See, e.g.*, *supra* at 13–14.  Whereas the party in *General Protecht* would have had to litigate the same claim—infringement—in two separate courts, *see* 651 F.3d at 1358 (noting that infringement claims were brought in both California and New Mexico), Adeia does not face that fate.  Opp. at 15–16.

Adeia's final argument on irreparable harm also fails.  Adeia claims that the public now has "a glimpse of Adeia's confidential information that Adeia can never undo," Mem. at 10, but Adeia does not explain how public disclosure in a lawsuit of the narrow categories of information disclosed here—patent ownership and Adeia's selection of at-issue patents concerning solely DirecTV's services—constitute an injury that is irreparable.  Nor does Adeia explain how the DJ action, itself, would reveal to the public the scope of the confidential information exchanged during the parties' licensing discussions, particularly given the potential for sealing of confidential and sensitive

11

business information.  *See* Opp. at 16.  Adeia instead speculates that the action has affected "ongoing licensing discussions" with DirecTV and may foreshadow similar breaches in the future.  Mem. at 10–11.  Both of these harms are speculative and do not answer, in the first instance, how DirecTV's prosecution of the DJ action causes Adeia irreparable harm.  *See Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) ("Irreparable harm is an injury that is not remote or speculative.") (2d Cir. 1995); *cf. Vringo, Inc. v. ZTE Corp.*, 2015 WL 3498634, at *4–5, *9–10 (S.D.N.Y. June 3, 2015) (finding a likelihood of irreparable harm where a defendant's "disregard of its obligations" was "so serious as to suggest the likelihood of future breaches" which would disclose confidential information).[6]

The Court concludes, therefore, that Adeia has not shown a likelihood of irreparable harm in the absence of a preliminary injunction.

### C.  The Balance of Equities and the Public Interest

Additionally, Adeia has not shown that the balance of hardships and the public interest tips in its favor.  As with its arguments on irreparable harm, Adeia claims that the equities weigh in its favor because granting an injunction would "give necessary teeth to an existing contractual duty."  Mem. at 12 (citing *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 237 (S.D.N.Y. 2014)).  But this argument overlaps entirely with the second factor courts consider in evaluating a preliminary injunction: likelihood of success on the merits.  In other words, Adeia asks the Court to find that the balance of equities always tips in favor of awarding a plaintiff an injunction where a likelihood of success on a breach of contract claim is shown.

A breach of contract, standing alone, does not outweigh the other considerations present in this case.  The Court agrees with DirecTV that entering a preliminary injunction would prevent DirecTV from bringing the claims it alleges in the DJ action in any court, as any such action would

---

[6] The cases concerning the attorney-client privilege cited by Adeia are inapposite.  *See* Mem. at 11–12.

constitute a possible breach of the NDA.  As a result, a ruling for Adeia would "force[]" DirecTV "to wait indefinitely for Adeia to sue it, all the while accruing damages for patent infringement."  Opp. at 22.  Although the DJ action may have forced Adeia to litigate infringement and validity claims at a different time, with a different scope, and in a different posture than it otherwise would have litigated these claims, the equities weigh equally strong in DirecTV's favor, which has an interest in seeking a declaratory judgment.

Last, Adeia claims an injunction is in the public interest because it would "encourage parties to abide by their agreements" and because denying the injunction "could disincentivize companies from attempting to negotiate licenses" in the first instance.  Mem. at 13, (first quoting *Tecspec LLC v. Donnolo*, No. 24 Civ. 8077, 2025 WL 1604333, at *6 (S.D.N.Y. June 6, 2025)).  As discussed above, the first argument largely repeats Adeia's breach argument and does not outweigh "the public's interest in resolving [live] disputes."  Opp. at 22.  The second assertion is ultimately speculative.  *See Tom Doherty Assocs.*, 60 F.3d at 37.

## CONCLUSION

For the reasons stated above, Adeia's motion for a preliminary injunction is DENIED.  Adeia's motion for argument in connection with its motion is also DENIED.  *See* ECF No. 49.

The Clerk of Court is respectfully directed to unseal the filings at ECF Nos. 26, 26-2, 26-8, and 26-9.  By **July 9, 2026,** the parties shall re-file their memoranda of law with redactions consistent with this opinion.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 24, 34, 43, 46, and 49.

SO ORDERED.

Dated: July 2, 2026
     New York, New York

_____
ANALISA TORRES
United States District Judge

13