# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADEIA INC. et al., | |
| *Plaintiffs,* | Civil Action No. 1:26-cv-00238-AT |
| v. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' DTSA CLAIM** |
| DIRECTV, LLC, | |
| *Defendant.* | |

████████████████████████████████

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................ii

I.    INTRODUCTION ........................................................................................................... 1

II.   REPLY ARGUMENT ..................................................................................................... 1

      A.    Adeia's ██████████████████████████ Does Not Qualify
          as a Trade Secret ................................................................................................ 1

      B.    The Alleged Trade Secrets Do Not Have IEV ........................................................ 3

          i.    Alleged IEV for DIRECTV ........................................................... 3

          ii.   Alleged IEV for Others................................................................. 6

      C.    Adeia's Conclusory Allegations of Misappropriation by Improper Use
          Should be Rejected ........................................................................................... 8

      D.    The Alleged Trade Secrets Are Not Related to a Product or Service
          Used In, or Intended for Use In, Interstate or Foreign Commerce ...................... 10

      E.    The Court Should Decline Supplemental Jurisdiction Over the Breach
          of Contract Claim............................................................................................. 11

III.  CONCLUSION............................................................................................................... 11

**TABLE OF AUTHORITIES**

**Cases**

*Adeia Media Holdings Inc. v. DIRECTV, LLC*,
No. 26-cv-7222 (C.D. Cal. July 2, 2026) ................................................................. 5

*DISH Network LLC v. Adeia Inc.*,
No. 26-cv-02811 (N.D. Cal. Apr. 1, 2026)............................................................... 7

*Freudenberg v. Cty. of Orange*,
No. 23-cv-847-KMK, 2024 WL 4307176 (S.D.N.Y. Sept. 25, 2024) ...................................... 11

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
921 F. Supp. 2d 197 (S.D.N.Y. 2013) ........................................................................ 3

*Kolari v. New York-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006) ................................................................................ 11

*loanDepot.com, LLC v. CrossCountry Mortg., LLC*,
No. 22-cv-5971-LGS, 2023 WL 3884032 (S.D.N.Y. June 8, 2023)......................................... 3

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
No. 17-cv-589-LGS, 2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018) ........................................ 3

*MedQuest Ltd. v. Rosa*,
No. 21-cv-5307-PGG, 2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) ...................................... 2

*N. Atl. Instruments, Inc. v. Haber*,
188 F.3d 38 (2d Cir. 1999) .................................................................................. 3

*Nat'l Convenience Distribs., LLC v. Mountain Candy & Cigar Co., Inc.*,
No. 25-cv-00259-ER, 2026 WL 862105 (S.D.N.Y. Mar. 26, 2026).......................................... 9

*Providence Title Co. v. Truly Title, Inc.*,
732 F. Supp. 3d 656 (E.D. Tex. 2024),
*aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026)........................................ 8

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*,
894 F. Supp. 2d 288 (S.D.N.Y. 2012) ....................................................................... 10

*Standard Oil Co., Ind. v. United States*,
283 U.S. 163 (1931) .......................................................................................... 10

*Stone Point Advisory, LLC v. S&P Glob. Mkt. Intelligence, Inc.*,
No. 25-cv-773-RA, 2026 WL 866848 (S.D.N.Y. Mar. 30, 2026)........................................ 2, 8

*Zenith Elecs. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999) ..................................................................... 10, 11

*Zurich Am. Life Ins. Co. v. Nagel*,
  538 F. Supp. 3d 396 (S.D.N.Y. 2021) ..................................................................... 4

**Statutes**

18 U.S.C. § 1839.................................................................................................. 3, 4, 6

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. 1, 3, 4, 11

██████████████████████████████

## I.    INTRODUCTION

Because Adeia's alleged trade secrets—████████████████████████████

████████████████████████████, Adeia must allege something more than time and

resources expended to ███████████████. Without such allegations, a compilation of public

information cannot be a trade secret. Adeia fails to identify this "something more" in its Complaint

or Response to Defendant's Motion to Dismiss ("Opposition"), and its DTSA claim should be

dismissed. Adeia also fails to demonstrate that it has adequately alleged misappropriation by

improper use. Adeia's conclusory allegations are consistent with mere possession, which is

insufficient absent improper acquisition. Adeia also argues without support that licensing ███████

████████████*products or services* in interstate commerce, ignoring cases holding that

███████ do not qualify as goods or services in analogous Lanham Act cases.

## II.    REPLY ARGUMENT

### A.    Adeia's ██████████████████████████ Does Not Qualify as a Trade Secret

Adeia admits, as it must, that the ██████████████ and the ██████████████

██████████████████████████ are publicly available. ECF 112 at 7 (admitting that

"██████████ were individually public" and "████████████████████████████"). This

case thus falls within the line of cases granting 12(b)(6) motions where information derived

entirely from public sources does not constitute a trade secret. ECF 74 at 9-11.

Unable to dispute the similarity, Adeia urges this Court to reject a *per se* rule that

DIRECTV never advanced. DIRECTV did not seek a categorical rule that compilations of public

data can never qualify as trade secrets. Instead, as the cases explain, when alleged compilations of

data trade secrets are derived entirely from public information, there must be something more than

allegations that the information was "difficult or arduous to assemble." *Stone Point Advisory, LLC v. S&P Glob. Mkt. Intelligence, Inc.*, No. 25-cv-773-RA, 2026 WL 866848, at *6 (S.D.N.Y. Mar. 30, 2026). Protection is provided only for information that is not readily ascertainable. *Id.* The *Stone Point* court dismissed a complaint for failure to adequately plead this "something more," explaining that:

> The extent of the allegations in the Complaint as to what IQ Banker actually does to generate "quantifiable supply chain intelligence" is as follows. … IQ Banker collects "millions of public filings and various documents" and applies "proprietary processes and frameworks" to home in on the "key documents." ... These "processes involve uncovering relationships, identifying and analyzing their economic value, and calculating the impact of corporate hierarchy on these connections to represent accurately the economic exposure of such relationships." ... In other words, it uses "proprietary analytics" to determine "how much of a supplier's total revenue is attributable to each of its customers."

*Id.* at *7 (citations omitted). The court found this insufficient, explaining that "it provides no detail as to what these proprietary processes, frameworks, or analytics are or how they transform public information into something protectable." *Id.*

Similarly, the Complaint alleges only that Adeia spent significant time and resources to ███████████████████████. *See* ECF 112 at 6-7 (quoting Complaint ¶ 54 "█████████ ████████," *id.* ¶ 56 "compiled information reflecting significant analysis," and *id.* ¶ 47 "significant resources in the form of time and money to analyze [Adeia's] ███████ █████.").[1] Adeia has admitted that ████████████████████████████, and thus this reliance on time and resources alone is insufficient. *See MedQuest Ltd. v. Rosa*, No. 21-cv-5307-PGG, 2023 WL 2575051, at *4 (S.D.N.Y. Mar. 20, 2023) (citing cases).

---

[1] Even as it alleges that this time and resources form the basis for its trade secrets claim, Adeia refuses to provide discovery on this issue as explained in DIRECTV's pending discovery dispute letter. ECF 80.

### B.    The Alleged Trade Secrets Do Not Have IEV

Adeia's alleged IEVs 1, 3, and 4 purport to demonstrate value in connection with DIRECTV; IEVs 2-4 with others. Each category is addressed separately below.

### i.    Alleged IEV for DIRECTV

In its Opposition, Adeia shifts its primary argument from Adeia's avoided litigation risks and costs identified in the Complaint to DIRECTV's alleged cost-savings in analyzing Adeia's media patent portfolio. ECF 112 at 9. Because this theory is not in the Complaint, Adeia's arguments are improper on a Rule 12(b)(6) motion. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013). Even assuming these facts were properly alleged, they do not support IEV as explained herein.

### 1.   Alleged Litigation-Based IEV

With respect to alleged cost-savings, Adeia urges this Court to adopt its circular reasoning that "plausible allegations of misuse … themselves plausibly show IEV." ECF 112 at 9. But, misappropriation and IEV are two separate requirements under 18 U.S.C. § 1839. *Compare id.* at (3)(B) (IEV) *with* (5) (misappropriation). Moreover, the cases cited by Adeia are distinguishable as each one involved ***improper acquisition*** of trade secrets. *See loanDepot.com, LLC v. CrossCountry Mortg., LLC*, No. 22-cv-5971-LGS, 2023 WL 3884032, at *1, *6 (S.D.N.Y. June 8, 2023) (employees took data compilations in violation of employment agreements). The court found that employees who took the information must have believed it to be valuable, allowing that improper acquisition to "circumstantially" establish economic value for the information. *Id.* at *6. Adeia's other cases also involved former employees who took information from the plaintiff companies. *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999); *Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17-cv-589-LGS, 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018).

██████████████████████████████

No such circumstantial evidence of value exists here. DIRECTV did not improperly take information from Adeia. DIRECTV legitimately had knowledge of ███████████████ ████████ at least through the parties' licensing negotiations. ECF 1 ¶¶ 30-32. Adeia chose what information to send to DIRECTV. ████████████████████████████████████ is not equivalent to the affirmative takings at issue in the cases Adeia cites. Adeia's related "needle-in-the-haystack" argument also flows from improper acquisition cases and conflates the effort to compile information with IEV, but as noted in Section II.A., effort alone is insufficient. Allowing properly-acquired knowledge to circumstantially support IEV would collapse the independent IEV requirement into the separate misappropriation element, contrary to the statute and governing case law. *See* 18 U.S.C. § 1839 (3)(B), (5); *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404 (S.D.N.Y. 2021) (treating trade secret establishment and misappropriation as independent elements on a 12(b)(6) motion).

Adeia makes two additional litigation-based IEV arguments. It argues that DIRECTV's lawsuit caused Adeia to incur litigation and associated costs (ECF 1 ¶ 50), and additionally that there is value to Adeia during licensing negotiations if its ████ are not tied up in litigation (ECF 1 ¶ 52). Both of these arguments fail because ███████████ is not independently tied to the alleged trade secrets. Adeia admits that "DIRECTV 'could have' filed a DJ at any time." ECF 112 at 11. This admission is fatal to its litigation-based IEVs.

Adeia speculates that any other lawsuit would have failed the case-or-controversy requirement, but the Court need not reach that issue. The crucial point is that DIRECTV was not limited to ████████████████████. DIRECTV licensed a patent portfolio allegedly consisting of over 4,000 patents.█████████████████████████████████. *See* ECF 1 ¶

4

████████████████████████████████

29. Since DIRECTV was not precluded from █████████████████████████████████

███████████████████████████████████████.

Moreover, with respect to Adeia's case-or-controversy argument, DIRECTV's DJ Complaint cited none of the information shared under the NDA. *See* Ex. 1. Thus, in this regard, there is no difference between the DJ Complaint and any other lawsuit that DIRECTV could have brought, underscoring the lack of connection between the alleged trade secrets and an avoided lawsuit.

Adeia also argues there is value because DIRECTV took a shortcut to the ████████████ ██████████████████████████████. ECF 112 at 9, 12, and 17. But DIRECTV was not limited to ██████████, and notably, Adeia does not allege or argue ███████████████████████████. Adeia has also taken the opposite position elsewhere. In its own infringement suit, Adeia asserts █████████████████████████████. Complaint (ECF 1), *Adeia Media Holdings Inc. v. DIRECTV, LLC*, No. 26-cv-7222 (C.D. Cal. July 2, 2026). And in the DJ Action, Adeia argued that "***adjudication of the ten patents DIRECTV selected would not constrain Adeia's ability to impose portfolio-wide licensing pressure.***" Ex. 3 at 5 (emphasis added); *see also* id. at 4-5. Adeia's own actions and statements thus undercut any argument that the ████████████████ ██████████████████████████████████.

### 2. Alleged Changes to ████████████████

The fourth alleged IEV relates to DIRECTV changing ██████████████████████████ ██████████████████████████████████████████████████. ECF 1 ¶ 53. The parties' NDA, however, did not ██████████████████████████████████████. ECF 74 at 23. In response, Adeia asserts that such changes are inconsistent with the NDA's Purpose. *See* ECF 112 at 18. This broad interpretation would apparently require DIRECTV to never: (1) change ██████ ████████████████████████████████████████████████, (2) adopt

██████████████████████████████

██████████████████████, or (3) discontinue ██████████████████. Regardless, this allegation is not included in the Complaint.

Adeia asserts that this is irrelevant because if the information had IEV before it was shared with DIRECTV, then it was a trade secret. *Id.* at 19. This argument ignores the language of 18 U.S.C. § 1839(3)(A)-(B), which requires that the owner "keep such information secret" from "another person who can obtain economic value from the disclosure or use of the information." If preventing such changes is the IEV, then Adeia destroyed its trade secrets by voluntarily sharing them without ████████████████████████████. Alternatively, any IEV is not actually connected to DIRECTV's ability to ████████████████████████████ ███████████ and does not derive from Adeia keeping ██████████████████████. Either way, there is no IEV tied to this issue.

### ii.    Alleged IEV for Others

With respect to other entities, Adeia argues that DIRECTV confuses misappropriation by "use" and IEV. ECF 112 at 14. Not so. As DIRECTV's opening memorandum explains, the Complaint never alleges that DIRECTV disclosed Adeia's trade secrets, but at the same time relies on IEV that would require disclosure (██████████████████████████). ECF 74 at 16-17. Adeia even admits that DIRECTV's "allegations [in the DJ Complaint] about why it selected the 10 patents ██████████." ECF 112 at 16. Adeia cannot rely on an IEV that requires disclosure when there has been no such disclosure, and thus Adeia's IEV theories 2-4 should be rejected.

### 1.   Alleged Motivation to Third Parties to Attack

Adeia maintains that various third parties "have means and motive to attack ███████ ████████████████████████████████████" ECF 112 at 15. Adeia fails to explain how third parties would know ██████████████████████████. At most, the Complaint alleges an IEV in "██████████████████████████████." ECF 1 ¶ 51

███████████████████████████████

(emphasis added). Notably absent is any allegation that DIRECTV supplied such knowledge—██

███████████████████████████████████████████████████████████████████████.

Adeia also continues to rely on short-sellers' "financial incentives to ██████████████

███████," but does not explain how this relates to anything beyond Adeia's stock value, which

does not supply any IEV. ECF 112 at 13-14; ECF 74 at 19-21.

### 2. IEV from Licensing Negotiations Impacted by Litigations

Adeia also alleges that others might discount ██████ tied up in litigation during licensing

negotiations. ECF 1 ¶ 52. Adeia cites the DISH DJ Action as evidence that "competitors know

███████████████████████████████████████████████████ or tied up in

litigation." ECF 112 at 17.[2] Adeia ignores the fact that in its scenario, the value of the ██████ does

not lie in secrecy but in the perceived strength of ██████████████████████████████

████████████████████. This argument also does not address the IEV actually alleged in the

Complaint—whether the █████████████ were discounted ████████████████████.

*See* ECF 1 ¶ 52. Even in its Opposition, Adeia does not assert that any such discounting occurred.

### 3. Third Parties' Alleged Changes to ████████████

Adeia asserts there is IEV in allowing others to "bypass an exceedingly impractical ██████

██████████████████████████████████████████████████████████

████████████████████" ECF 112 at 19. Again, DIRECTV's lawsuit did not change that

analysis—████████████████████████████████████████████████████████

████████████████████████████████). Additionally, the value does not lie in

---

[2] It appears that the Adeia-DISH patent license expired on or around March 31, 2026, and both parties filed lawsuits. *See* Complaint (ECF 1) ¶ 4, *DISH Network LLC v. Adeia Inc.*, No. 26-cv-02811 (N.D. Cal. Apr. 1, 2026). Contrary to Adeia's assertions, however, the DISH DJ Complaint states unequivocally that DISH relied only on ***Adeia's public statements in this action*** regarding ████████████████████████████████. *Id.* at ¶¶ 22-47.



mere knowledge. Any value is tied to the merits of ██████████████████████████ ███████████████████████████. And this IEV requires additional steps—a third party must assess those merits, determine those merits warrant ██████████████████████ ████████████████████████. The value derives from these additional factors rather than mere knowledge. While Adeia objects to *Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656 (E.D. Tex. 2024), *aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026), that case's analysis mirrors this court's analysis that distinguishes between lists of potential customers and actual customers. The key is that the value does not lie in the publicly-available information itself or knowledge thereof. Instead, actual customer lists may have value where there are additional factors that contributed to converting a potential customer to an actual customer—*e.g.*, relationship building or internal information about preferences. *See Stone Point*, 2026 WL 866848, at *6. Here, too, knowledge of the ███████████████ is not **independently** valuable. Instead, the value depends on the merits of ████████████████████████████████████. Those merits are the additional factor that will lead a party to change its alleged ███████████, and thus Adeia's knowledge-based arguments do not support this IEV.

## C.    Adeia's Conclusory Allegations of Misappropriation by Improper Use Should be Rejected

The parties agree that the only misappropriation allegations are improper use allegations related to DIRECTV's ████████████████████████. *See* ECF 112 at 20. These allegations arise from the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████. ECF 1 ¶ 59. None of these allegations plausibly allege improper, rather than proper, use. Adeia's claim is rooted in DIRECTV's knowledge acquired through proper means. This flawed reasoning equates possession of the information with use, which "does not suffice to

██████████████████████████████

plausibly allege . . . use of those trade secrets." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020); *see also Nat'l Convenience Distribs., LLC v. Mountain Candy & Cigar Co., Inc.*, No. 25-cv-00259-ER, 2026 WL 862105, *7-*8 (S.D.N.Y. Mar. 26, 2026) (employee's "know-how" is not misappropriation).

The implications of Adeia's trade secret misappropriation theory are extraordinarily broad. As to the ████████████████████████████████████ ████████████████████████████████████ ███████████. ECF 1 ¶¶ 34-35, 39-43. Adeia's theory is apparently that any defendant that receives a ████████████████████████████████████ ████████████████████████████████████████.

Adeia's theory with respect to "use" of its ███████████ presents even further issues. The DJ Complaint █████████████████████████—a legally required analysis based on public information. *See* ECF 1 ¶¶ 40-41. It also included ███████████ ████████████████████████. *Id.* ¶¶ 43-44. Adeia argues that DIRECTV is precluded from asserting ████████████████████████████████████ ████████████████████████████████████ ██████. Adeia places no limits on this alleged improper use, and if given its broadest scope, this would also ████████████████████████████████████ ███████████████████. This is not hypothetical. Adeia has sued DIRECTV for patent infringement, ████████████████████████████████████████. ECF 1, No. 26-cv-7222 (C.D. Cal. July 2, 2026). Under Adeia's theory, ███████████████ ███████████████████████████. Adeia cannot improperly use the threat of trade secret misappropriation to insulate its █████████████████



█████████████████████████████████████████. DIRECTV, not Adeia, ███████

███████████████████████████████████████ (*see* ECF 1 ¶¶ 34-44), and is not

required to forego its ████████ or risk liability for trade secret misappropriation. DIRECTV's ████

████████████████████████████████████████████, and Adeia's conclusory

allegations that those ███████████████ were improperly used should be dismissed.

**D.    The Alleged Trade Secrets Are Not Related to a Product or Service Used In, or Intended for Use In, Interstate or Foreign Commerce**

Adeia does not contest that it is a patent assertion entity. Adeia's arguments focus primarily

on an interstate commerce connection, ignoring the separate requirement for a product or service,

and its reliance on *Standard Oil Co., Ind. v. United States*, 283 U.S. 163, 168-169 (1931) is

misplaced. That case related to a Sherman Act violation, which specifically addresses an

agreement's effect on interstate commerce without the DTSA's additional products or services

requirement.

Adeia urges the Court to find that its ███████████ qualifies as a service but fails to cite

a single case in support. A license is a contract entered into between parties. A service connotes

ongoing work or support by the provider. *See Rockland Exposition, Inc. v. All. of Auto. Serv.*

*Providers of N.J.*, 894 F. Supp. 2d 288, 304 (S.D.N.Y. 2012) ("As used in the Lanham Act, the

term 'services' has been defined as 'the performance of labor for the benefit of another'") (citations

omitted). Adeia fails to explain how a contract concerning ████████████ is a service in

interstate commerce.

Adeia relies on *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999) to

support its assertion that statements about ███████ can give rise to Lanham Act claims despite

the goods or services requirement. ECF 112 at 22. Fatal to Adeia's argument is the fact that the

Federal Circuit, in deciding that interlocutory appeal, specifically stated that "we assume (without

deciding) that the conduct alleged here is within the scope of § 43(a), and that Exzec has sufficiently pled the necessary elements for such a claim." *Id.* at 1348; *see also id.* at n.3. Thus, the Federal Circuit expressly declined to address the issue on which Adeia relies. Moreover, even in *Zenith*, the 43(a) claimant—███████████████—offered the good or service in interstate commerce. *Id.* Adeia offers no case law support holding that ***another's*** ███████████ can satisfy this DTSA requirement.

Adeia also urges this Court to decline consideration of this issue since it was not expressly presented in the parties' pre-motion letters. ECF 112 at 22. Adeia's waiver argument should be rejected because a "'pre-motion conference letter' does not constitute 'a 'motion' under Rule 12 such that a failure to raise a defense in such a letter results in a waiver of that defense.'" *Freudenberg v. Cty. of Orange*, No. 23-cv-847-KMK, 2024 WL 4307176, at *1 (S.D.N.Y. Sept. 25, 2024). There is no prejudice as the argument presents "a pure and straightforward legal issue," it was included in DIRECTV's opening memorandum, and Adeia had adequate opportunity to brief the issue. *See id.* at *12-*13.

### E. The Court Should Decline Supplemental Jurisdiction Over the Breach of Contract Claim

Upon balance of "judicial economy, convenience, fairness, and comity," in the "usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted). This is the usual case, which supports declining supplemental jurisdiction.

## III. CONCLUSION

DIRECTV respectfully requests that the Court grant its motion to dismiss Plaintiffs' DTSA claim.

11

Date: July 30, 2026                    Respectfully submitted,

                                       */s/Sharon L. Davis*
                                       Steven Lieberman (SL8687)
                                       Sharon L. Davis (admitted pro hac vice)
                                       Michael H. Jones (admitted pro hac vice)
                                       Rachel M. Echols (admitted pro hac vice)
                                       Bryan B. Thompson (6004147)
                                       Benjamin H. Fishman (admitted pro hac vice)
                                       ROTHWELL, FIGG, ERNST & MANBECK, P.C.
                                       901 New York Avenue, N.W., Suite 900 East
                                       Washington, DC 20001
                                       Telephone: (202) 783-6040
                                       Facsimile: (202) 783-6031
                                       slieberman@rothwellfigg.com
                                       sdavis@rothwellfigg.com
                                       mjones@rothwellfigg.com
                                       rechols@rothwellfigg.com
                                       bthompson@rothwellfigg.com
                                       bfishman@rothwellfigg.com

                                       *Attorneys for Defendant DIRECTV, LLC*

12

**CERTIFICATE OF COMPLIANCE**

I, Sharon L. Davis, hereby certify that this memorandum of law complies with the length restrictions in Local Civil Rule 7.1(c) and the Individual Practices in Civil Cases before Judge Analisa Torres.

I further certify that this memorandum of law contains 3,493 words, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Civil Rule 7.1(c) and Your Honor's Individual Practices. In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

/s/Sharon L. Davis

Sharon L. Davis