[redacted]

CALDWELL
CASSADY
CURRY

Bradley W. Caldwell
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
bcaldwell@caldwellcc.com
Phone: 214.888.4840
Facsimile: 214.888.4849

September 17, 2026

**VIA ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

Re: *Adeia Inc. v. DIRECTV, LLC*, No. 1:26-cv-00238-AT

Dear Judge Aaron:

Pursuant to the Court's Order at Docket 143, Adeia submits as Exhibits A–P documents reflecting updated versions of docket entries that are subject to motions to seal in which a significant number of redactions have been removed based on the guidance provided in the Court's Preliminary Injunction Order. Orange or green highlighting in the exhibits indicates redactions that Adeia proposes to remove—i.e., material that Adeia no longer seeks to have filed under seal. The remaining redactions—material proposed to remain under seal—are differentiated by the following color scheme to assist the Court's review. Redactions highlighted in yellow or blue indicate redactions that reflect Adeia's confidential and proprietary information regardless of the Court's views on the impact of possible public disclosures arising from the former presence of the Court's Preliminary Injunction Order on the Lexis and Westlaw databases. Redactions contained within a black box are redactions that likely depend on whether the Court ultimately concludes that disclosures in the Court's Preliminary Injunction Order impact the Court's ability to seal similar information. For the reasons described below, the Court should maintain both categories of information under seal.

## I. FACTUAL BACKGROUND

This is a trade secrets case that also involves a breach of an NDA through DIRECTV's improper use of information that Adeia expressly identified as confidential under the parties' NDA. Adeia and DIRECTV were discussing a possible licensing arrangement to Adeia's patent portfolio. DIRECTV asked for more information [redacted] Adeia requested that DIRECTV enter into an NDA first. Dkt. 141-001 ¶ 1. DIRECTV did so. *Id.*

DIRECTV received Adeia's confidential and trade secret information. Instead of using the information to evaluate a licensing deal in good faith, DIRECTV used Adeia's information to

[redacted]

develop non-infringement arguments and prepare a declaratory judgment action despite the fact that DIRECTV expressly promised not to use the information in this manner. Dkt. 141-001 ¶¶ 3-5.

Throughout the case, Adeia has diligently sought to balance the public's interest in disclosure of judicial proceedings with Adeia's interest in protecting its trade secrets. DIRECTV, in contrast, has sought substantive advantage with every piece of information publicly disclosed. DIRECTV is currently asking the district court overseeing its declaratory judgment action—filed in breach of the NDA—to draw factual inferences about the nature of the information Adeia shared under NDA (currently redacted and under seal in this case) based on inferences from all of the unredacted information. *Id.* ¶¶ 10–11. The plan is clear: the more that is left unredacted in this case, the better chance DIRECTV has to try to whitewash its breach and destroy or erode the rights Adeia specifically bargained for in the parties' agreement.

On July 2, 2026, the Court denied Adeia's Motion for Preliminary Injunction. Dkt. 93. An important piece of Adeia's bargained-for right in the NDA was Adeia's ability to [redacted] To establish subject matter jurisdiction for its DJ action, DIRECTV must allege facts showing sufficient enforcement activity to give rise to an alleged injury-in-fact, and they also must allege facts showing that the declaratory judgment case would remedy the underlying controversy. *See, e.g.*, *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1087-88 (N.D. Cal. 2013); *Apple v. Qualcomm*, 992 F.3d 1378, 1382-83 (Fed. Cir. 2021).

The Court's Order inadvertently disclosed certain facts in recounting the factual background of the preliminary injunction dispute, including that "Adeia emailed to DirectTV a [redacted]

Docket 93 was originally posted on the Court's public docket at 6:19 PM Eastern Time—after business hours on July 2, 2026. Ex. Q. Because July 4, 2026 fell on a Saturday, Friday July 3, 2026 was a federal holiday. Shortly after receiving the Order, counsel for Adeia attempted to contact the Court by telephone to request an opportunity to argue for sealing portions of the Order. But because of the late hour on the last day before the holiday weekend, no one answered. Within one hour of posting, counsel for Adeia also emailed the Court with the same request. Ex. R. Very shortly thereafter, the Court indicated it would order the Clerk's office to temporarily seal the Order and set a briefing schedule for Adeia's motion to permanently seal portions of the Order. *Id.*

Because of the holiday, the Clerk's office did not pull the Order from the public dockets immediately. The office was apparently already closed for the holiday weekend. But at least by the following Monday, the Order was no longer available on PACER, and it is not currently publicly available via that database. Once the Order was removed from PACER, counsel for Adeia

[redacted]

reached out to multiple sources to attempt to remove any postings of the Order from the Internet. It contacted numerous aggregator services and docket scrapers to let them know that this information had been sealed by the Court and was no longer publicly available. Adeia understands those services to have pulled the information. Adeia also contacted Lexis and Westlaw.

On August 26, 2026, this Court entered an ECF order stating that "certain of the redactions reflect information that is a matter of public record and certain of the redactions are impacted by the analysis contained in the July 2, 2026 Order," and noting that the July 2, 2026 Order was still "publicly available on the Lexis database . . . and appears to have been available at an earlier period of time on the Westlaw database . . . ." Dkt. 138. At that point in time, Adeia believed that the Order had already been removed from Westlaw and Lexis as a result of Adeia's efforts. Thus, on learning that the Order remained available on Lexis, counsel for Adeia immediately contacted Lexis again. Counsel was informed that, in response to Adeia's previous request, Lexis had removed the Order from one portion of their service, but not from another portion where it also appeared. Lexis then remedied the issue, and the Order now no longer appears on the Lexis service. Adeia is not aware of any publicly available source to obtain the July 2 Order at this time.

## II. ARGUMENT

### A. <u>The Court Should Not Unseal Otherwise Sealable Information Based on Disclosures in the July 2, 2026 Order.</u>

Among other things, Adeia seeks to maintain confidentiality of its trade secrets despite judicial disclosures that were publicly available on PACER for a weekend and publicly available on Westlaw and Lexis for, at most, approximately 7 weeks. These disclosures do not destroy confidentiality or bring these trade secrets into the public domain. The material is no longer available on these databases or, to Adeia's understanding, anywhere else. For the reasons described below, this material should remain under seal.

#### 1. A Brief Disclosure on a Paywalled Database Does Not Warrant Unsealing.

Adeia addressed how this information was properly sealable in a prior pending brief. Dkt. 96. To avoid unnecessary repetition, Adeia simply incorporates the argument by reference here.

A court has authority to seal confidential information despite a limited period of disclosure. In *Pullman v. Alpha Media Publishing, Inc.*, 624 F. App'x 774 (2d Cir. 2015), the Second Circuit affirmed a district court's decision to seal a confidential settlement amount in a transcript. The opinion notes that the transcript had "become available." *Id.* at 779. While the Court "redacted the settlement amount soon after the September 2013 transcript became available," "a third party" nevertheless posted the unredacted transcript "on an online message forum." *Id.* Despite the period of time that the transcript had "become available" before the redaction and despite the posting of the unredacted transcript on an Internet message board forum, the Second Circuit affirmed the motion to seal the material. Despite the public disclosure of the information, the Court nevertheless had discretion to seal the information. *Id.* at 779-80.

The *Pullman* Court distinguished the prior case of *Gambale v. Deutsche Bank AG*. 377

[redacted]

F.3d 133 (2d Cir. 2004). At the time of the *Gambale* decision, the information sought to be redacted had been on Westlaw and Lexis databases for over a year, and it was still there. The order disclosing the settlement was still also presumably available on PACER. Moreover, the material at issue had been published in an article in the New York Times.

These competing cases reveal that the Second Circuit's approach to disclosures and their impact on sealing motions is fact-specific. Absent here are the types of facts that would make the information in the Court's July 2, 2026 Order no longer secret. There was no news article concerning the confidential information during the period in which the Order was public. There is no evidence that the material was downloaded from Westlaw or Lexis by any individuals that did not otherwise have permissible access to the materials through participation in this litigation. Indeed, because Westlaw and Lexis are behind a paywall, that information is less accessible than an Internet message board, which could be accessed by anyone.

The Court's ability to maintain this information under seal is even stronger than in *Pullman* as the public has no legitimate interest in the public disclosure of a trade secret. Congress has enacted statutory confidentiality protections for trade secrets filed in lawsuits. The statute *requires* courts to "enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835(a) (noting that the Court "shall" perform these acts). Sealing these portions of the Court's July 2, 2026 Order is such an "order[] and . . . other action" that is "necessary and appropriate" to preserve Adeia's claimed trade secrets here.

Sealing is appropriate under any standard, but this statute also changes the balance between a public right of disclosure, if any, against Adeia's competing interest in preserving confidentiality. Congress has spoken, and it has weighed the balance for the Court. Trade secrets cannot be disclosed. To do otherwise would risk a premature adjudication on the merits of the claimed trade secrets themselves under the auspices of a procedural decision about sealing because the ruling itself would impair or destroy the claimed trade secrets.

In an analogous scenario—protections of grand-jury materials protected by Rule 6(e) of the Federal Rules of Criminal Procedure—courts have held that the rule supplants any pre-existing common law right or framework. *In re Grand Jury Subpoenas Dated Mar. 2, 2015,* No. 15-MC-71 (VEC), 2016 WL 6126392, at *3 (S.D.N.Y. Oct. 19, 2016). In that context—the secrecy of matters occurring before the grand jury—courts also wrestle with how public disclosures may impact the right of secrecy or confidentiality. Relevant here, courts have recognized that "[n]ot every public disclosure waives Rule 6(e) protection." *Id.* (quoting *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007)). Generally, material loses the Rule 6(e) protection only where it is *widely* known, either because a witness disclosed their testimony on the evening news or there is evidence that information was widely circulated in the press. *See, e.g.*, *In re Off. of New York State Att'y Gen.*, No. 25 MISC. 19 (LGS), 2025 WL 3042026, at *4 (N.D.N.Y. Oct. 31, 2025) (material lost status as secret grand jury material "in the wake of two hundred-plus news reports" and where the information was "personal attorney largely confirmed to *NPR*"); *see also In re Grand Jury Subpoena, Judith Miller*, 493 F.3d at 154 (ordering disclosure of only "matters that have become widely known through whatever source—whether by revelations at the Libby trial or from grand jury witnesses themselves"). Where, as here, the disclosures are not widely publicized and are no longer public, the Court has the authority to seal

[redacted]

the material, and it should exercise that power.

There are no facts here like those in *Gambale*. In *Gambale*, the information was still available on Westlaw and Lexis at the time the Second Circuit issued its decision—over a year after the information was first published there. Here, the information is not presently available on Westlaw or Lexis. In *Gambale*, there was a disclosure in the pages of the New York Times. Here, there is no news publication of any kind. There is not even evidence that anyone but those individuals associated with this litigation downloaded the Court's July 2, 2026 Order from Westlaw, Lexis, or anywhere else. So there is no evidence that this information is known, much less "widely known." *Boehm v. F.B.I.*, 948 F. Supp. 2d 9, 27 (D.D.C. 2013) (affirming application of FOIA exemption based on grand jury material objection because there was "no evidence that the information being withheld was widely publicized," so there was "no basis to conclude that evidence withheld . . . has become a matter of public record"); *see also Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016) (denying to seal material because "[i]n *light of the extensive publicity* surrounding Cosby's admissions, we are similarly without power to affect the dissemination of the unsealed documents' contents in any meaningful way" (emphasis added)); *Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012) ("Once a fact is *widely available* to the public, a court cannot grant any 'effective relief' to a person seeking to keep that fact a secret." (emphasis added)).

In short, this case is much more like *Pullman*—in which courts maintain secrecy of materials in the face of arguable public disclosures—than it is like *Gambale*—in which more than a year passed with the order posted on the legal databases, with the New York Times publishing the information in the interim. Because the circumstances here differ significantly from those in *Gambale*, the Court has authority to maintain this information under seal. And based on the congressional directive embodied in the Defend Trade Secrets Act, the Court should do so.

**2. The Material Adeia Seeks to Seal from the July 2, 2026 Order Is Otherwise Sealable.**

Adeia addressed how this information was properly sealable in a prior pending brief. Dkt. 96. To avoid unnecessary repetition, Adeia simply incorporates the argument by reference here.

**B. <u>The Court Should Grant the Motions to Seal Subject to Adeia's Updated Redactions.</u>**

Adeia has reviewed the pending motions to seal in view of the Court's Order referencing analysis in the Court's July 2, 2026 Order and factual disclosures in the July 2, 2026 Order. Adeia has attached documents with proposed updated redactions. The material shown in orange and green reflects material that is removed from prior proposed redactions to reflect the Court's reasoning and rationales reflected in the portions of the Court's July 2, 2026 Order related to whether material was properly sealable. The material outlined in a black box is material Adeia believes is implicated by the Court's decision related to the issue in Section II.A.1, and that Adeia believes should remain under seal.

## III. CONCLUSION

For the reasons stated above, the Court should grant the pending motions to seal as

[redacted]

modified in the attached redacted documents.

Respectfully submitted,

/s/ *Bradley W. Caldwell*
Bradley W. Caldwell

cc: Counsel of record (via ECF)