[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADEIA INC. et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>DIRECTV, LLC,<br>*Defendant.* | Civil Action No. 1:26-cv-00238-AT-SDA<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

[redacted]

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

III. LEGAL STANDARDS .......... 8

A. Breach of Contract Under New York Law .......... 8

B. The Defend Trade Secrets Act ("DTSA") .......... 8

IV. ARGUMENT .......... 10

A. Adeia's Breach of Contract Claim Fails as a Matter of Law .......... 10

1. Sections 3 and 5 of the NDA Permit the Parties to Use Public Portions of Confidential Information .......... 11

2. Section 6 of the NDA Does Not Prohibit Filing a Legal Action on [redacted] .......... 11

B. Because Adeia Can Identify No Genuine Issue of Material Fact Regarding Its DTSA Claim, Summary Judgment Is Warranted .......... 14

1. Adeia's Confidential Information Does Not Qualify as Trade Secrets .......... 16

2. Discovery has Confirmed that the Alleged Trade Secrets Do Not Possess Independent Economic Value ("IEV") .......... 20

a. Cost-savings theory .......... 21

b. Avoided lawsuit theory .......... 22

c. [redacted] theory .......... 22

d. [redacted] in litigation theory .......... 23

e. [redacted] theory .......... 24

3. There Is No Misappropriation because DIRECTV Did Not Improperly Use the Alleged Trade Secrets .......... 25

[redacted]

4. Adeia Has Not Shown that Its Trade Secrets Are Related to a Product or Service in Interstate Commerce ... 25

V. CONCLUSION ... 27

[redacted]

# TABLE OF AUTHORITIES

## Cases

*24 Seven, LLC v. Martinez*,
No. 19-cv-7320-VSB, 2021 WL 276654 (S.D.N.Y. Jan. 26, 2021)....................................17, 21

*Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*,
678 F. App'x 839 (11th Cir. 2017)..........................................................................................22

*Barbini v. First Niagara Bank, N.A.*,
331 F.R.D. 454 (S.D.N.Y. 2019)..............................................................................................19

*Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*,
1 F. Supp. 3d 224 (S.D.N.Y. 2014),
*aff'd*, 610 F. App'x 69 (2d Cir. 2015) ...............................................................................17, 20

*Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
355 F. App'x 516 (2d Cir. 2009)..............................................................................................12

*Brice v. State Farm Fire & Cas. Co.*,
761 F. Supp. 2d 96 (S.D.N.Y. 2010) .........................................................................................8

*Comet Techs. USA, Inc. v. XP Power, LLC*,
181 F.4th 988 (9th Cir. 2026)...................................................................................................23

*Converged Compliance Sols., Inc. v. XOP Networks, Inc.*,
No. 21-cv-5482-PGG-OTW, 2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024) ...........................26

*Cox Operating, LLC v. Wells Fargo, N.A.*,
No. 19-cv-1889, 2021 WL 5856334 (S.D. Tex. Nov. 5, 2021)................................................22

*Digigan, Inc. v. Ivalidate, Inc.*,
No. 02-cv-420-RCC, 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004)............................................27

*Donohue v. Cuomo*,
184 N.E.3d 860 (N.Y. 2022) .......................................................................................................8

*Elsevier Inc. v. Doctor Evidence, LLC*,
No. 17-cv-5540-KBF, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)............................................9

*GeoVector Corp. v. Samsung Elecs. Co.*,
234 F. Supp. 3d 1009 (N.D.C.A. 2017)...................................................................................22

*Greenfield v. Philles Recs., Inc.*,
780 N.E.2d 166, (N.Y. 2002) ......................................................................................................8

[redacted]

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) .......... 13

*Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG*,
No. 96-cv-8147-PKL, 1998 WL 148427 (S.D.N.Y. Mar. 27, 1998) .......... 27

*Hayden v. Int'l Bus. Mach. Corp.*,
No. 21-cv-2485-VB, 2025 WL 1697021 (S.D.N.Y. June 17, 2025) .......... 9, 16

*HK Kolmar USA, LLC v. Wormser Corp.*,
813 F. Supp. 3d 430 (S.D.N.Y. 2025) .......... 13

*IGT v. High 5 Games, LLC*,
380 F. Supp. 3d 390 (S.D.N.Y. 2019) .......... 14

*In re Bayerische Motoren Werke AG*,
No. 22-mc-115-VB, 2022 WL 2817215, (S.D.N.Y. July 19, 2022) .......... 27

*Intrepid Fin. Partners, LLC v. Fernandez*,
No. 20-cv-9779-LTS, 2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) .......... 17

*Knocking Inc. v. Carter*,
No. 24-cv-9020-VEC, 2026 WL 2939674 (S.D.N.Y. Sept. 30, 2026) .......... 10, 26

*KT Grp. Ltd. v. NCR Corp.*,
No. 15-cv-7482-PGG, 2018 WL 11213091 (S.D.N.Y. Sept. 29, 2018) .......... 20

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
424 F.3d 195 (2d Cir. 2005) .......... 13, 15

*loanDepot.com, LLC v. CrossCountry Mortg., LLC*,
No. 22-cv-5971-LGS, 2023 WL 3884032 (S.D.N.Y. June 8, 2023) .......... 22

*Medidata Sols., Inc. v. Veeva Sys., Inc.*,
No. 17-cv-589-LGS, 2021 WL 467110 (S.D.N.Y. Feb. 9, 2021) .......... 16

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 23

*MedQuest Ltd. v. Rosa*,
No. 21-cv-5307-PGG, 2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) .......... 18, 19

*Packaging Corp. of Am., Inc. v. Croner*,
419 F. Supp. 3d 1059 (N.D. Ill. 2020) .......... 26

*Providence Title Co. v. Truly Title, Inc.*,
732 F. Supp. 3d 656 (E.D. Tex. 2024),
*aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026) .......... 25, 26

[redacted]

*Rockstim Consulting, LLC v. Workrise Techs., LLC*,
No. 25-cv-1844, 2026 WL 2804622 (W.D. Tex. Sept. 18, 2026) .......... 27

*Stone Point Advisory, LLC v. S&P Glob. Mkt. Intelligence, Inc.*,
No. 25-cv-773-RA, 2026 WL 866848 (S.D.N.Y. Mar. 30, 2026) .......... 18, 19

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) .......... 21

*TNS Media Res., LLC v. TRA Global, Inc.*,
977 F. Supp. 2d. 281 (S.D.N.Y. 2013) .......... 18

**Statutes**

18 U.S.C. § 1836 .......... 8, 25

[redacted]

Defendant DIRECTV, LLC ("DIRECTV") respectfully submits this Memorandum of Law in Support of Its Motion for Summary Judgment on both the breach of contract claim and trade secrets misappropriation claim under the Defend Trade Secrets Act ("DTSA") filed by Plaintiffs Adeia Inc., Adeia Media Holdings Inc., Adeia Media LLC, Adeia Guides Inc., Adeia Technologies Inc., and Adeia Media Solutions Inc. ("Adeia").

## I. INTRODUCTION

This case arises from a [redacted]. To facilitate renewal negotiations, the parties entered a Mutual Non-Disclosure Agreement (the "NDA"), and Adeia sent DIRECTV a [redacted] 56.1 ¶¶ 33, 84; Ex. 3, ADEIA-DTV_007310 ([redacted]); Ex. 4, ADEIA-DTV_001251 [redacted][1] DIRECTV responded with its own [redacted]. 56.1 ¶ 50; Ex. 5, ADEIA-DTV_007324 (DIRECTV Letter). [redacted] DIRECTV instituted a declaratory judgment action on ten Adeia patents (the "DJ Action"). 56.1 ¶¶ 50–51, 56; NDCA ECF 1, DJ Complaint, *DIRECTV, LLC v. Adeia, Inc.*, No. 25-cv-11048 (N.D. Cal. Dec. 29, 2025). Adeia now asks the Court to treat the filing of that lawsuit as both a breach of the NDA and a misappropriation of trade secrets—even though DIRECTV's DJ Complaints did not disclose, refer to, or rely on Adeia's [redacted].[2] None of the NDA provisions on which Adeia relies were breached by the filing of the DJ Action.

---

[1] "Ex." refers to the exhibits attached to the Declaration of Rachel M. Echols, submitted concurrently herewith.

[2] Adeia, in fact, successfully challenged declaratory judgment jurisdiction in the Northern District of California precisely because DIRECTV had not [redacted]. NDCA ECF 71 at 5.

[redacted]

Adeia admits the NDA does not prohibit filing a declaratory judgment action. 56.1 ¶¶ 36-38, 40; Ex. 1, at ADEIA-DTV_090930. Adeia further admits that the DJ Complaint and Amended DJ Complaint are based on public patents and product information, and do not [redacted]. 56.1 ¶¶ 65, 74-77. The NDA expressly allows the use of any publicly available information for any purpose. Ex. 1, at ADEIA-DTV_090930. And the NDA's prohibition on "use for the purpose of, as the basis for, or in support of" a Legal Action means that the disclosures of Confidential Information cannot be cited or relied upon to support legal filings, and not, as Adeia suggests, [redacted] No such bar is included in the unambiguous NDA language, and Adeia's overbroad interpretation should be rejected.

Adeia's DTSA claim fails as well for multiple reasons. *First*, Adeia cannot show misappropriation because there was no improper use under the NDA and [redacted] is insufficient. *Second*, the information does not qualify as a trade secret because it is a compilation of public information that is not kept secret and because it does not derive independent economic value from its secrecy. To the contrary, Adeia uses its [redacted] as a business tool to [redacted] from others by sharing it with them upon request, and thus the value lies in sharing this information, not keeping it secret. *See* 56.1 ¶¶ 82-83, 95-100, 106-107, 112-115; Ex. 6, Graham Dep. at 58:22-59:2, 62:24-65:9; Ex. 7, Moore Dep. at 66:7-67:3. *Third*, given that Adeia is a patent assertion entity, it also cannot sufficiently establish that the trade secrets are related to products or services offered in interstate commerce. The Court should thus grant summary judgment for DIRECTV on both claims.

[redacted]

## II. FACTUAL BACKGROUND

Adeia is in the business of licensing its patent portfolio. 56.1 ¶ 10; ECF 1, ¶¶ 13-19. One of those patent portfolios is its media patent portfolio. 56.1 ¶ 14; ECF 1 ¶ 29. DIRECTV or its predecessors were licensees of Adeia or its predecessors for decades. 56.1 ¶¶ 18-20; ECF 1 ¶ 20. The parties' predecessors negotiated a license effective January 1, 2016, that expired on December 31, 2025. 56.1 ¶¶ 18-20, 25; ECF 1 ¶ 21. Before its expiration, Adeia and DIRECTV entered into the NDA to further facilitate their negotiations. 56.1 ¶ 33; Ex. 1, at ADEIA-DTV_090930. The NDA defines "Confidential Information" in Section 1, provides "Confidentiality Obligations" in Section 3, "Confidential Information Exceptions" in Section 5, and "Protections" with respect to Legal Actions in Section 6:

> 1. **Confidential Information**. "**Confidential Information**" means any information disclosed or made available by a party, its Affiliates, or its Representatives (collectively, "**Discloser**") under this Agreement to the other party, its Affiliates, or its Representatives (collectively, "**Recipient**") in furtherance of the Purpose during the Disclosure Period, including business and technical information, information relevant to patents that Discloser owns or has the right to license (e.g., patent numbers, patent ownership, patent analysis, etc.), pricing, and product information, that: (a) is in written form and is marked with "Confidential", or a similar designation; (b) is in oral form and identified by Discloser as being confidential at the time of disclosure; or (c) is of a nature that could reasonably be construed to be confidential. …
>
> 3. **Confidentiality Obligations.** Each party shall (and shall cause its Affiliates and Representatives) to: (a) maintain the other party's Confidential Information in strict confidence, and not disclose or make use of such Confidential Information except as permitted hereunder; (b) use such Confidential Information only for the Purpose; (c) use at least as great a standard of care in protecting such Confidential Information as it uses to protect its own information of like character, but in any event not less than a reasonable degree of care; … .
>
> 5. **Confidential Information Exceptions**. Other than as expressly set forth in Section 6, nothing in this Agreement restricts or impairs Recipient's right to use, disclose, or otherwise deal in

[redacted]

> portions of the Confidential Information which: (a) at the time of disclosure to Recipient are in the public domain, as evidenced by any form of publication; (b) after disclosure to Recipient become part of the public domain by any form of publication through no fault of Recipient or its Affiliates or Representatives; … .
>
> 6. **Protections**. Neither party shall (and shall not act through a third party to) use the Confidential Information for the purpose of, as the basis for, or in support of, any Legal Action between the parties. For purposes of the foregoing, "**Legal Action**" means any patent infringement action, declaratory judgment action, reexamination, *inter partes* review, post-grant review, opposition, interference, validity challenge, enforcement challenge, ownership challenge, administrative proceeding, judicial proceeding or similar proceeding, but excludes any action or proceeding to enforce the obligations under this Agreement. Neither party shall use the disclosure during the Disclosure Period of the Confidential Information for the purpose of, as the basis for, or in support of any allegation in any litigation or other court or administrative proceeding to claim that the other party was on notice for purposes of knowledge, damages, or willful patent infringement with respect to Confidential Information. Notwithstanding the protections in this Section 6, a party may use in any Legal Action Confidential Information that is obtained during discovery for such Legal Action, but only to the extent that such Confidential Information exists independent of the Purpose (for example, financial or technical information concerning a party's business or products that was created independent of the Purpose). This Section 6 is to be construed as a whole, and the invalidity or unenforceability of any portion of this Section 6 of this Agreement shall render all of this Section 6 similarly invalid or unenforceable.

56.1 ¶¶ 33-47; Defendant's Supplemental Rule 56.1 Statement of Material Facts ("Supp. 56.1") ¶¶ 140-141; Ex. 1, at ADEIA-DTV_090930-090931.

On [redacted], Adeia sent DIRECTV the [redacted]. 56.1 ¶ 49; Ex. 3; Ex. 4. Negotiations continued, and DIRECTV [redacted]. 56.1 ¶¶ 50-52; Ex. 5.

[redacted]

The parties' [redacted] and just before its license expired, DIRECTV filed the DJ Action. 56.1 ¶¶ 25, 56; NDCA ECF 1. The DJ Action included [redacted] *See* Plaintiffs' Additional Facts in Support of Their Response to Defendant's Motions for Summary Judgment ("Add'l Facts") ¶ 5; ECF 1 ¶¶ 38-39, 43. The DJ Complaint included allegations related to the parties' prior licensing history but did **not** [redacted], did **not** [redacted], and did **not** even reference that the parties had entered into an NDA. 56.1 ¶¶ 57-68, 73-77; NDCA ECF 1. Adeia responded with the lawsuit in this Court, alleging that in filing the DJ Action, DIRECTV breached the NDA and misappropriated Adeia's trade secrets. 56.1 ¶ 124, ECF 1.

Adeia also moved to dismiss the DJ Complaint for lack of subject matter jurisdiction, and in doing so admitted that:

- "[t]he Complaint does not allege any specific communication in which Adeia asserted infringement of any patent—no claim chart, no cease-and-desist letter, no notice of alleged infringement of any kind,"
- "[t]he Complaint alleges no infringement analysis by Adeia whatsoever. It fails to allege an instance in which Adeia evaluated DIRECTV's products, compared them to any claim limitations, or even referenced the specific patents DIRECTV has placed at issue,"
- "[t]here is not a single allegation of claim charts, product-to-patent mapping, or any other hallmark of an infringement analysis,"
- "[t]he pleading does not even assert that Adeia mentioned these particular patents in any communication," and
- "DIRECTV does not allege any communication in which Adeia referenced any of the ten patents DIRECTV selected for this suit, much less any DIRECTV product said to infringe them."

[redacted]

56.1 ¶¶ 73-77; NDCA ECF 38, Adeia Motion to Dismiss at 3, 10-11. The Northern District of California court granted Adeia's motion on June 18, 2026, but granted DIRECTV leave to file an amended complaint. Add'l Facts ¶ 8; NDCA ECF 58.

DIRECTV filed the Amended DJ Complaint on July 21, 2026, which included the same ten patents. 56.1 ¶ 56; NDCA ECF 64, Amended DJ Complaint. Like the original complaint, the Amended DJ Complaint did **not** [redacted] and did **not** [redacted]. 56.1 ¶¶ 58-68; NDCA ECF 64. It included new allegations from information Adeia decided to leave unredacted when it filed the public Complaint and its public Memorandum of Law in Support of Its Proposed Order to Show Cause for Preliminary Injunction in this action. Add'l Facts ¶ 9; NDCA ECF 64 ¶¶ 28, 33-38. Adeia again moved to dismiss for lack of subject matter jurisdiction, and the Northern District of California court granted that motion on October 6, 2026, finding in part that the Amended DJ Complaint allegations do not plausibly "support an inference [that] Adeia specifically charged certain of Plaintiff's products as infringing those specific patents." Supp. 56.1 ¶ 143; NDCA ECF 65, Adeia Motion to Dismiss Amended DJ Complaint; NDCA ECF 71, Order at 6.

Adeia's claims for breach of contract and trade secret misappropriation are based on its theory that DIRECTV improperly used Adeia's Confidential Information to [redacted] in violation of the NDA. 56.1 ¶ 124; Add'l Facts ¶¶ 2, 4; ECF 1. With respect to the trade secrets, Adeia asserts that the following three trade secrets were misappropriated: [redacted]

[redacted]. 56.1 ¶ 116; Ex. 8, Plaintiffs' First Supp. Resp. to Interrogatories 14-16 at 11, 15, 22-23.

Even though neither Adeia's alleged trade secrets nor any of its Confidential Information appears in DIRECTV's DJ Complaints, Adeia asserts that DIRECTV improperly used this information by filing a DJ Action that [redacted] 56.1 ¶¶ 58-68, 73-77; Add'l Facts ¶¶ 4-5. Adeia takes an expansive view of the NDA's prohibited use, [redacted] ECF 141, Plaintiff's Pre-Motion Letter at 2-3; 56.1 ¶¶ 58-77. Under Adeia's theory, [redacted]. No such provision appears in the NDA even though the NDA expressly contemplates the possibility of Legal Actions, including declaratory judgment actions. 56.1 ¶ 44; Ex. 1, at ADEIA-DTV_090930-090932.

The record also demonstrates that the Confidential Information alleged to be trade secrets does not qualify as such. There is no dispute that the patents and the information about DIRECTV's products and services included in the DJ Complaints were public. 56.1 ¶¶ 69-72. Adeia primarily [redacted]. 56.1 ¶ 129; Ex. 9, ADEIA-DTV_089891 ([redacted]); Ex. 10, Stoll Rep. ¶ 140. [redacted]. 56.1 ¶ 130; Add'l Facts ¶ 13; Ex. 9. Adeia further alleges, without documentary support, that its

[redacted]

[redacted]. Add'l Facts ¶ 13; Ex. 11, Albakri Dep. at 101:8-102:3.

Although Adeia largely asserts privilege over the details of [redacted], Adeia's witness testified that, as a general matter, it [redacted] 56.1 ¶¶ 118, 126; Ex. 11, at 102:16-103:9. These are the same considerations [redacted]. *See* Supp. 56.1 ¶¶ 145-149; Ex: 12, Stoll Dep. at 89:10-90:1; Ex. 13, Patterson Rep. ¶¶ 35, 48, 50-55, 80-81, 87.

## III. LEGAL STANDARDS

### A. Breach of Contract Under New York Law

Under New York law, "[d]etermining whether a contract is ambiguous 'is an issue of law for the courts to decide.'" *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022) (quoting *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). Unless a court finds the contract ambiguous, the interpretation of that contract is also a question of law for the court, and thus interpretation of an unambiguous contract may properly be resolved by summary judgment. *See Brice v. State Farm Fire & Cas. Co.*, 761 F. Supp. 2d 96, 99-100 (S.D.N.Y. 2010).

### B. The Defend Trade Secrets Act ("DTSA")

18 U.S.C. § 1836(b)(1) provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." Information qualifies as a trade secret only if:

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

[redacted]

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

Although the existence of a trade secret is a question of fact, "[s]ummary judgment may be appropriate where it is clear that the information at issue is not actually secret or there is no discernible economic value from that information not being generally known." *Hayden v. Int'l Bus. Mach. Corp.*, No. 21-cv-2485-VB, 2025 WL 1697021, at *11 (S.D.N.Y. June 17, 2025) (citation omitted). "To survive summary judgment, a plaintiff … must provide credible evidence that the trade secret exists and is ascertainable," and must "describe the secrets with greater precision" than "vague and indefinite illustrations." *Id.* at *11, *16 (citation omitted). "Trade secrets are a narrow category of confidential information," and must meet "a standard far greater than the standard for confidentiality of business information." *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540-KBF, 2018 WL 557906, at *4-*5 (S.D.N.Y. Jan. 23, 2018).

With respect to the allegations here, 18 U.S.C. § 1839(5)(B)(ii)(II) explains that misappropriation means: "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." When the misappropriation allegation is not based on improper acquisition of the trade secret, a plaintiff must show more than "speculative inferences" of use to survive summary judgment. *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 22-1348, 2024 WL 177726, at *2-*3 (2d Cir. Jan. 17, 2024); *see also Knocking Inc. v. Carter*, No. 24-cv-9020-VEC, 2026 WL 2939674, at *8 (S.D.N.Y.

[redacted]

Sept. 30, 2026) (granting summary judgment because "[t]he conclusory allegation that Defendants must have misappropriated Knocking's trade secrets because Carter forwarded emails to herself is not enough to sustain Plaintiff's trade secrets claim at this stage of the litigation.").

## IV. ARGUMENT

The NDA did not prohibit declaratory judgment actions, and even assuming that Adeia's factual allegations concerning "use" were accurate, that alleged use was not prohibited by the NDA. Thus, DIRECTV did not breach the NDA. It likewise did not misappropriate Adeia's alleged trade secrets, and additionally, Adeia's information does not qualify as a trade secret. Thus, summary judgment of no trade secret misappropriation under the DTSA is also appropriate.

### A. Adeia's Breach of Contract Claim Fails as a Matter of Law

Adeia admits that the NDA does not prohibit either party from filing a Legal Action. 56.1 ¶¶ 36-37; ECF 141 at 2; Ex. 1, at ADEIA-DTV_090930-090932. Instead, "Adeia contends that DIRECTV [redacted]." ECF 141 at 2. Accordingly, Adeia claims that DIRECTV breached sections 3 and 6 of the NDA. *Id.* To support its contention, Adeia (1) stretches the meaning of Confidential Information well beyond any reasonable understanding of that term, capturing indisputably public information [redacted], (2) ignores the NDA exceptions regarding use of such public information, and (3) incorrectly equates [redacted]. *Id.* Under New York law, the plain language of the NDA does not include the broad prohibition on "use" that Adeia urges, and this Court should grant DIRECTV's motion for summary judgment that it did not breach the NDA.

[redacted]

### 1. Sections 3 and 5 of the NDA Permit the Parties to Use Public Portions of Confidential Information

Adeia alleges that DIRECTV violated Section 3 of the NDA by using "Confidential Information for reasons other than the Purpose." ECF 141 at 2; Ex. 1, at ADEIA-DTV_090930. However, Section 3 must be read in view of the entire NDA, including Section 5, which expressly provides that the NDA does not "restrict[] or impair[] Recipient's right to use, disclose, or otherwise deal in **portions** of the Confidential Information which: (a) at the time of disclosure to Recipient **are in the public domain**, … [or] (b) after disclosure to Recipient **become part of the public domain by any form of publication through no fault of Recipient** …". 56.1 ¶¶ 42-43; Ex. 1, at ADEIA-DTV_090930 (emphasis added). This provision expressly permits the parties to use portions of Confidential Information that are in the public domain. *Id.* This is a classic public domain carve-out, setting forth the parties' understanding that any public information, including public information included in the parties' confidential materials, is not subject to the use restrictions. *See, e.g., Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 355 F. App'x 516, 518 (2d Cir. 2009) (affirming dismissal of breach of contract claim where "no factfinder could conclude that [the information] constituted *confidential* information within the meaning of the Agreement, which expressly excluded from that definition 'information ... generally available to the public.'"). The parties do not dispute that [redacted] are in the public domain, and this includes all [redacted]. 56.1 ¶¶ 69-72. Thus, even if those [redacted] constitute a portion of Adeia's Confidential Information, Section 5 expressly permits their use.

### 2. Section 6 of the NDA Does Not Prohibit Filing a Legal Action on [redacted]

Section 6 addresses the specific issue of whether a party can rely on the disclosures of Confidential Information made during the negotiations to support a Legal Action against the other

[redacted]

party. It was intended to have exactly the impact that it had here—limiting DIRECTV's ability to use Adeia's [redacted]. *See* NDCA ECF 71. DIRECTV complied with that provision by omitting from its pleadings, *inter alia*, the fact that Adeia [redacted]. DIRECTV did not use the Confidential Information "for the purpose of, as the basis for, or in support of" its DJ Complaint because it did not rely on [redacted] to serve as the basis for its DJ Action.

Section 6 restricts the use of Confidential Information in a Legal Action in two circumstances. *First*, a party may not use Confidential Information "**<u>for the purpose of, as the basis for, or in support</u>** of any Legal Action between the parties." 56.1 ¶ 44; Ex. 1, at ADEIA-DTV_090931 (emphasis added). *Second*, a party may not use the disclosure during the Disclosure Period "**<u>for the purpose of, as the basis for, or in support of</u>** any allegation … to claim that the other party was on notice for purposes of knowledge, damages or willful patent infringement with respect to Confidential Information." *Id.* (emphasis added). Read together, these clauses bar a party from using Confidential Information as the pleaded, asserted, or evidentiary basis for a Legal Action, and separately bar a party from using the disclosure event itself to plead, assert, or otherwise prove notice, knowledge, damages, or willfulness. This reading gives each sentence independent meaning as New York law requires. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("[T]he contract should be construed so as to give full meaning and effect to all of its provisions.") (citations and quotations omitted).

That reading is also confirmed by the doctrine of *noscitur a sociis*. Under New York law, associated words explain and limit each other, and a term in a contractual provision may be understood by reference to the company in which it is found. *See HK Kolmar USA, LLC v.*

[redacted]

*Wormser Corp.*, 813 F. Supp. 3d 430, 447 (S.D.N.Y. 2025) (applying *noscitur a sociis* to interpret broad terms in contract); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (the doctrine "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words[.]"). Here, the phrases "for the purpose of, as the basis for, or in support of" appear together twice. Adeia urges that "for the purpose of" [redacted] as the basis for" [redacted] ECF 141 at 2-3. But these terms must be read in context with the phrase "in support of." Read in that context, the associated terms all prohibit litigation-based use of the Confidential Information to form the basis or predicate to bring a Legal Action.

Adeia would instead rewrite Section 6 of the NDA into a [redacted]. Adeia urges this rewrite even though it admits that the NDA does not include a standstill or other "blanket prohibition on the filing of lawsuits." *See* 56.1 ¶¶ 36-38 (admitting that the agreement includes no "standstill" and that Adeia has [redacted]). Had this been the parties' intent, they could have said so. They did not, and New York law strongly disfavors adding language into a contract under the guise of contract interpretation. *IGT v. High 5 Games, LLC*, 380 F. Supp. 3d 390, 399 (S.D.N.Y. 2019) (declining to impose additional requirements on the contracting parties because it would "effectively ask[] this Court to incorporate language not found in the contract[]" "under the guise of interpreting the writing.") (citation omitted).

Adeia's contrary reading also collapses the two separate restrictions on Legal Action use. If the first clause were as broad as Adeia suggests, then the later clause would serve no independent purpose because using the disclosure to plead notice, knowledge, damages, or willfulness would

[redacted]

already be barred by the broad first clause. Instead, the first clause must have meaningful limits: it bars a party from using Confidential Information as the basis for the Legal Action itself, whether that be in the pleadings, assertions, or evidence. Any other reading would render the second phrase superfluous. *See LaSalle Bank Nat'l Ass'n*, 424 F.3d at 206.

Thus, even accepting Adeia's [redacted] of the evidence, DIRECTV did not breach Section 6. The DJ Action pleadings include public information about [redacted] and DIRECTV's products and indisputably do not include or reference the Confidential Information. 56.1 ¶¶ 58-77; NDCA ECF 1; NDCA ECF 64. Thus, under the correct interpretation, DIRECTV has not breached the NDA.

Adeia's attempt to manufacture a factual dispute under DIRECTV's Section 6 reading also fails. Adeia argues that the DJ Complaint's allegations made "[redacted]" are an [redacted], but this does not create a triable issue of fact when it is undisputed that the DJ Complaints do not identify any [redacted]. 56.1 ¶¶ 58-68, 73-77; NDCA ECF 38 at 3, 10-11; NDCA ECF 65 at 1, 3, 7, 10-11. With respect to the statements in DIRECTV's Amended DJ Complaint, each one of those statements cited in Adeia's Additional Facts ¶ 9 is quoted from statements that Adeia itself made and left unredacted in public filings in this action, and thus this is not Confidential Information under the NDA. *See* ECF 1; ECF 22.

Under the proper interpretation of the NDA, there has been no breach by DIRECTV, and summary judgment on Adeia's breach of contract claim is warranted.

### B. Because Adeia Can Identify No Genuine Issue of Material Fact Regarding Its DTSA Claim, Summary Judgment Is Warranted

Adeia asserts [redacted] trade secrets: [redacted]

[redacted]

[redacted]. 56.1 ¶ 116. The record, however, demonstrates that: (i) none of the [redacted] qualifies as a trade secret because they are derived entirely from public information, not secret, and readily ascertainable; (ii) none derives independent economic value from its secrecy; (iii) DIRECTV's lawful possession of the information does not constitute misappropriation; and (iv) none is sufficiently related to a product or service offered in interstate commerce. Any one of these failures is fatal and warrants summary judgment on Adeia's DTSA claim.

As an initial matter, Adeia has shifted the definition of its trade secrets throughout this case. The Complaint identified [redacted] trade secrets: "[redacted]." ECF 1 ¶ 46. Its interrogatory responses then identified the [redacted] listed above: [redacted]. 56.1 ¶ 116; Ex. 8, at 11, 15, 22-23. In response to DIRECTV's Rule 56.1 Statement, Adeia asserted that these are merely "[redacted]" 56.1 ¶ 116. A plaintiff who claims every combination of [redacted] and treats its own identification as open-ended "categories" has not described its secrets with the precision required at summary judgment. *See Hayden*, 2025 WL 1697021, at *12, *16; *Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17-cv-589-LGS, 2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021). Since Adeia seems to have walked back this broadening in its Pre-Motion Letter (ECF 141 at 3), this memorandum addresses the [redacted] trade secrets alleged above.

[redacted]

### 1. Adeia's Confidential Information Does Not Qualify as Trade Secrets

To qualify as a trade secret, information must not be "generally known" or "readily ascertainable through proper means." 18 U.S.C. § 1839(3)(B). In determining whether information is a trade secret, New York courts consider the six First Restatement factors:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*24 Seven, LLC v. Martinez*, No. 19-cv-7320-VSB, 2021 WL 276654, at *4-*5 (S.D.N.Y. Jan. 26, 2021) (citation omitted). Adeia's alleged trade secrets do not satisfy this standard.

*First*, the components of each alleged trade secret are indisputably public. Adeia admits that [redacted] are public information. 56.1 ¶¶ 69-72. [redacted] Supp. 56.1 ¶ 150; Ex. 12, at 15:15-23. It is further undisputed that the DIRECTV product information [redacted]. 56.1 ¶ 72; Ex. 12, at 149:4-8 (conceding that [redacted].").

*Second*, a "plaintiff asserting a combination trade secret must demonstrate that the way in which the publicly-available components fit together is unique and not publicly-known." *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 271 (S.D.N.Y. 2014), *aff'd*, 610 F. App'x 69 (2d Cir. 2015); *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-cv-9779-LTS, 2020 WL 7774478, at *3-*4 (S.D.N.Y. Dec. 30, 2020) ("To the extent a plaintiff seeks trade secret protection for a compilation of otherwise publicly available information, the plaintiff must

[redacted]

demonstrate a 'unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.'") (citation omitted). It must explain how it "transform[ed] public information into something protectible." *Stone Point Advisory, LLC v. S&P Glob. Mkt. Intelligence, Inc.*, No. 25-cv-773-RA, 2026 WL 866848, at *6-*7 (S.D.N.Y. Mar. 30, 2026); *MedQuest Ltd. v. Rosa*, No. 21-cv-5307-PGG, 2023 WL 2575051, at *4 (S.D.N.Y. Mar. 20, 2023) (citing cases); *see also TNS Media Res., LLC v. TRA Global, Inc.*, 977 F. Supp. 2d. 281, 315 (S.D.N.Y. 2013) ("Positioning Secret" was not a trade secret under New York law because it "merely compares pertinent features of TRAnalytics—that were publicly disclosed—to features of competitors that were public knowledge.").

Adeia cannot show that its [redacted] is anything other than routine [redacted] that is readily ascertainable. Adeia's corporate witness testified that "[redacted]" 56.1 ¶ 126; Ex. 11, at 102:16-103:9[redacted] (Add'l Facts ¶ 13; Ex. 11, at 101:8-102:3), [redacted] 56.1 ¶¶ 129-130; Add'l Facts ¶ 13; Ex. 9; Ex. 10, ¶ 140. These are the same considerations [redacted] Supp. 56.1 ¶¶ 145-149; Ex: 12, at 89:10-90:1 ([redacted]); Ex. 13, ¶¶ 35, 48, 50-55, 80-81, 87 ([redacted]). That Adeia has not uniquely combined publicly-available components is underscored by the fact that it [redacted]

[redacted]

[redacted]. 56.1 ¶¶ 128-132; Ex. 9. Allegations of time and money spent to develop the information, or even arguments that the information was "difficult or arduous to assemble" do not establish trade secret status for compilations of public data. *See Stone Point Advisory, LLC*, 2026 WL 866848, at *6–7; *MedQuest Ltd.*, 2023 WL 2575051, at *4.

*Third*, Adeia cannot carry its burden of showing that anything it did transformed public information into a trade secret. *See id.* [redacted]. 56.1 ¶¶ 118-120; Ex. 11, at 68:8-71:9, 94:21-95:25, 102:20-103:16, 104:11-105:20, 114:23-116:4. This was a deliberate litigation choice: [redacted]. *See* ECF 80, Joint Letter Motion for Discovery at 4-5; ECF 127, Defendant's Letter in Resp. & Opp. to Adeia's Supp. Letter at 3. It is Adeia's burden to prove what allegedly made its [redacted] something more than routine work on public information, thereby elevating the results of that work to trade secret status, [redacted]. *See Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 460 (S.D.N.Y. 2019). Adeia's lack of any transformative evidence compels the conclusion that the information was readily ascertainable.

*Fourth*, Adeia does not keep this type of information secret. To the contrary, the very [redacted]. 56.1 ¶¶ 82-83, 95-100, 106, 112-115; Ex. 6, at 58:22-59:2, 62:24-65:9; Ex. 7, at 66:7-67:3. Adeia admits that it [redacted]

[redacted] *Id.* Disclosure to numerous third parties defeats secrecy. *KT Grp. Ltd. v. NCR Corp.*, No. 15-cv-7482-PGG, 2018 WL 11213091, at *13-*14 (S.D.N.Y. Sept. 29, 2018); *see also Big Vision*, 1 F. Supp. 3d at 267. [redacted] *See* ECF 141 at 3-4. What matters is that Adeia disclosed its [redacted] 56.1 ¶¶ 113-114. Its willingness to do so shows that Adeia itself does not regard its [redacted] as information requiring protection but instead uses this information as a sales tool.

*Fifth*, Adeia itself has filed lawsuits on its media portfolio patents and admits that [redacted] 56.1 ¶ 105; Ex. 6, at 71:12-19. Several of the [redacted] have been involved i[redacted] *Id.* ¶¶ 78-79. Adeia did not sue Altice for breach of contract or trade secret misappropriation. Adeia cannot reconcile its position that [redacted]

The undisputed record here demonstrates that Adeia's information does not fall within the narrow category of confidential information that qualifies as trade secrets. Each alleged trade

[redacted]

secret is derived entirely from public sources, developed from [redacted], with overlapping information shared repeatedly with both [redacted]. It is Adeia's business to share this information to [redacted]. This is not secret information—it is either already [redacted] or readily ascertainable. Because the information does not qualify as a trade secret, summary judgment is warranted.

### 2. Discovery has Confirmed that the Alleged Trade Secrets Do Not Possess Independent Economic Value ("IEV")

As explained in DIRECTV's motion to dismiss (ECF 74 and 115), Adeia must also prove that the information "derives independent economic value … from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B). The statute thus requires a causal link between secrecy and value. Expenditures alone do not satisfy that requirement. *24 Seven*, 2021 WL 276654, at *8-*9 (plaintiff must show how its efforts "translate[] to an independent economic advantage over its competitors."). Additionally, "[p]roof of value untethered to value derived from secrecy does not show an alleged trade secret's [IEV]." *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 772 (4th Cir. 2023) (affirming summary judgment). Here, Adeia advances multiple theories in an effort to show IEV, but none of those theories is legally and factually sufficient to satisfy its burden.[3]

[3] Adeia's damages expert proffers an opinion that the trade secrets damages [redacted] *See* Supp. 56.1 ¶¶ 152-153; Add'l Facts ¶ 14; Ex. 14, Bergman Rep. ¶ 15; Ex. 10, ¶¶ 90, 135-38. These opinions will be addressed in DIRECTV's motion to exclude Adeia's expert testimony, also being filed today.

[redacted]

**a. Cost-savings theory**

Adeia's primary IEV argument is that DIRECTV saved the cost of [redacted]. ECF 141 at 4; Add'l Facts ¶¶ 13-14; Ex. 10, ¶¶ 90, 135-38. This theory fails because it does not support the conclusion that the value of that [redacted] is derived from secrecy. DIRECTV was already [redacted], and there is no value in keeping that information secret from DIRECTV. *See GeoVector Corp. v. Samsung Elecs. Co.*, 234 F. Supp. 3d 1009, 1016-17 (N.D.C.A. 2017) (finding [redacted] possessed no IEV under California law and did not constitute trade secrets under New York law because "Samsung was clearly already aware of how its own products work … prior to reviewing Summers's [redacted]").

It also ignores that Adeia [redacted] 56.1 ¶¶ 95-100, 106. Information a licensor routinely hands to each counterparty as a negotiating tool does not derive its value from being kept secret from that counterparty. *See Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 854 (11th Cir. 2017) (finding no IEV under Florida's UTSA because "[a] price quote generates potential economic value only when it is shared with [a] prospective business partner."); *Cox Operating, LLC v. Wells Fargo, N.A.*, No. 19-cv-1889, 2021 WL 5856334, at *7 (S.D. Tex. Nov. 5, 2021) (finding no IEV under DTSA and Texas UTSA where "the alleged independent economic value is negotiation leverage.").

Adeia also argues in its opposition to DIRECTV's motion to dismiss that DIRECTV's use itself proves value, relying on cases such as *loanDepot.com, LLC v. CrossCountry Mortg., LLC*, No. 22-cv-5971-LGS, 2023 WL 3884032, at *6 (S.D.N.Y. June 8, 2023). ECF 112 at 9-10. But there, the improper taking of the information itself served as circumstantial evidence of economic value. *loanDepot.com, LLC*, 2023 WL 3884032, at *6. In contrast, there is no improper acquisition

[redacted]

here—[redacted]. Treating properly acquired knowledge as circumstantial proof of value would collapse the independent IEV element into the misappropriation element. *See* 18 U.S.C. § 1839(3)(B), (5); *Comet Techs. USA, Inc. v. XP Power, LLC*, 181 F.4th 988, 997 (9th Cir. 2026) (rejecting harmless error argument that would "effectively rewrite the DTSA" by collapsing two distinct DTSA elements in reversing and remanding for a new trial).

**b. Avoided lawsuit theory**

It is undisputed that DIRECTV was not prohibited from filing a declaratory judgment action. 56.1 ¶ 40; ECF 112 at 11 ("DIRECTV 'could have' filed a DJ at any time."). DIRECTV was a licensee of the entire 4,000-plus patent media portfolio and could have [redacted]. *See* ECF 1 ¶ 29; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007). DIRECTV could have, for example, filed suit based on [redacted]. *See* 56.1 ¶¶ 78, 81. Adeia has no evidence to show that it would have avoided a lawsuit altogether.

Moreover, subsequent events have confirmed that the DJ Action filed was not unique. The DJ Complaint and Amended DJ Complaint have been dismissed for lack of jurisdiction. NDCA ECF 58; NDCA ECF 71. In dismissing the Amended DJ Complaint, the court credited Adeia's arguments that no patent-specific injury was plausibly pleaded. *See* NDCA ECF 71 at 6. Thus, in this regard, there is no difference between the DJ Action and another lawsuit that DIRECTV could have brought, underscoring the lack of connection between [redacted].

**c. [redacted] theory**

This theory depends on third parties learning Adeia's trade secrets—[redacted]. It is undisputed that Adeia's trade secrets

[redacted]

were not disclosed in DIRECTV's DJ Complaint. 56.1 ¶¶ 58-68, 73-77; Ex. 6, at 179:14-23. At most, Adeia contends that the Amended DJ Complaint [redacted] (56.1 ¶¶ 60–64; Add'l Facts ¶ 9), but those allegations quote only statements Adeia itself chose to leave unredacted in its public filings in this action. *See* Section IV.A.2, *supra*. Indeed, the Northern District of California has now dismissed the case precisely because [redacted]. NDCA ECF 71 at 6.

Adeia's reliance on DISH's declaratory judgment action omits that DISH expressly stated its understanding [redacted] was based on Adeia's statements and not on DIRECTV's statements. Supp. 56.1 ¶ 144; DISH NDCA ECF 1 ¶¶ 35, 37-38, 41-44.

Adeia has also not identified a single short seller [redacted] Moreover, Adeia's witnesses, including its experts, maintain that [redacted]. Supp. 56.1 ¶ 151; Ex. 10, ¶ 87; Ex. 6, at 63:15-66:3. To the extent Adeia's theory is based on Adeia's stock price, it fails because the company's overall stock price cannot serve as an "independent" value of a particular trade secret. *Synopsys*, 70 F.4th at 771-72.

**d. [redacted] theory**

It is undisputed that [redacted]. 56.1 ¶ 88. Adeia further admits that adjudication of the ten DJ patents "would not constrain Adeia's ability to impose portfolio-wide licensing pressure" on DIRECTV. *Id.* ¶ 139. And Adeia's witness could not identify a [redacted]. *Id.* ¶ 87. Adeia's expert points to testimony [redacted]. *See*

[redacted]

56.1 ¶ 87; Ex. 10, ¶ 155; Ex. 7, at 145:6-150:3. Adeia has been involved in many recent Pay-TV litigations including with Altice in 2025 and the litigations Adeia initiated against DISH and DIRECTV in March 2026 and July 2026, respectively. 56.1 ¶¶ 79, 89, 91; Supp. 56.1 ¶ 142. Adeia has also confirmed that [redacted] (56.1 ¶ 86), and there is no record evidence that [redacted]. Adeia has thus failed to establish any value derived from [redacted].

**e. [redacted] theory**

Adeia admits it has no evidence that any [redacted]. 56.1 ¶¶ 136-137. Without actual support, this alleged IEV fails. A third parties' independent decisions about their own products, [redacted] would turn on the [redacted]. Thus, [redacted]. *See Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 665-66 (E.D. Tex. 2024), *aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026) (rejecting an IEV argument based on defendant having "a 'roadmap' to 'poach entire offices'" because the "theory does not establish that the business information at issue is *independently* valuable. Instead, any value that could be derived from the information is contingent on additional factors.")

As to DIRECTV, Adeia argues that "[redacted] is not consistent with the NDA's Purpose," ECF 112 at 18, underscoring just how far Adeia is stretching the NDA's prohibitions on use. Adeia points to no specific restriction, and review of the NDA demonstrates that DIRECTV was not prohibited from making changes to its products or public information related thereto. Ex. 1, at ADEIA-DTV_090930-090932.

[redacted]

Because Adeia has failed to show that its alleged trade secrets possess IEV, summary judgment as to its DTSA claim is appropriate.

**3. There Is No Misappropriation because DIRECTV Did Not Improperly Use the Alleged Trade Secrets**

Adeia's sole misappropriation theory is that DIRECTV improperly used its trade secrets in [redacted]. 56.1 ¶ 124; Add'l Facts ¶¶ 2, 4. Adeia does not allege improper acquisition or disclosure. Because, as shown in Section IV.A above, DIRECTV did not use Adeia's Confidential Information in breach of the NDA, it did not use it "without express or implied consent" in violation of any duty to limit its use. 18 U.S.C. § 1839(5)(B)(ii)(II).

Adeia cannot substitute DIRECTV's lawful possession for proof of use. *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-cv-5482-PGG-OTW, 2024 WL 4665114, at *10 (S.D.N.Y. Sept. 25, 2024 ); *see also Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020). At summary judgment, "a plaintiff must provide 'evidence of actual use,'" and "use cannot be inferred from mere results." *Providence Title*, 732 F. Supp. 3d at 669-70; *see also TransPerfect Glob., Inc.*, 2024 WL 177726, at *2-3 (affirming summary judgment where plaintiff relied on "speculative inferences" of use); *Knocking Inc.*, 2026 WL 2939674, at *8.

Adeia cannot meet its burden of proving that DIRECTV improperly used its alleged trade secrets, and thus its misappropriation claim fails as a matter of law.

**4. Adeia Has Not Shown that Its Trade Secrets Are Related to a Product or Service in Interstate Commerce**

18 U.S.C. § 1836(b)(1) requires that the trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce." The record shows that Adeia is a patent assertion entity and does not offer products or services for use in commerce. 56.1 ¶¶ 10-17.

[redacted]

Adeia admits that it is "a leading IP licensing platform," that it has "one reportable segment: IP Licensing," and that its primary source of revenue is licensing its media and semiconductor patent portfolios. 56.1 ¶¶ 12-14. Adeia describes its own business as placing its innovations "in the hands of consumers via the products and services offered by its licensing partners." ECF 1 ¶ 18. Adeia is thus a patent assertion entity that "does not manufacture, distribute, or sell products." *In re Bayerische Motoren Werke AG*, No. 22-mc-115-VB, 2022 WL 2817215, at *1 n.1 (S.D.N.Y. July 19, 2022) (citation omitted). Under the Lanham Act, [redacted] is not a good or service in commerce, and there is no reason to treat it differently under the DTSA. *See Digigan, Inc. v. Ivalidate, Inc.*, No. 02-cv-420-RCC, 2004 WL 203010, at *4–5 (S.D.N.Y. Feb. 3, 2004); *Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG*, No. 96-cv-8147-PKL, 1998 WL 148427, at *2 (S.D.N.Y. Mar. 27, 1998). Adeia has not identified a single case where [redacted] constituted a service under the DTSA.

Adeia alternatively argues that the trade secrets relate to [redacted]. ECF 112 at 21; ECF 141 at 4; Add'l Facts ¶¶ 18-19; Ex. 10, ¶ 150. While Adeia offers no authority in support, one recent case found that a plaintiff offering oil and gas engineering, consulting, and quality control services solely in Texas adequately pled the DTSA interstate commerce requirement with respect to its purely intrastate services because those services were provided to out-of-state market participants. *Rockstim Consulting, LLC v. Workrise Techs., LLC*, No. 25-cv-1844, 2026 WL 2804622 at *6 (W.D. Tex. Sept. 18, 2026). However, neither this case nor those cited therein involved a plaintiff that did not actually offer its own products or services at least in intrastate commerce. The alleged trade secrets here, [redacted]. At most, Adeia may in

[redacted]

the future obtain a court decision that DIRECTV [redacted], but that decision is untethered to what information Adeia alleges to be trade secrets here—[redacted]. Adeia's statutory reading would extend the DTSA to [redacted] eliminating the very product or service guardrails put in place by the statute.

## V. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its summary judgment motion for each of Adeia's breach of contract and DTSA trade secret misappropriation claims.

Date: October 13, 2026

Respectfully submitted,

*/s/Sharon L. Davis*
Steven Lieberman (SL8687)
Sharon L. Davis (admitted pro hac vice)
Michael H. Jones (admitted pro hac vice)
Rachel M. Echols (admitted pro hac vice)
Bryan B. Thompson (6004147)
Benjamin H. Fishman (admitted pro hac vice)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (2020 783-6040
Facsimile: (202) 783-6031
sdavis@rothwellfigg.com
mjones@rothwellfigg.com
rechols@rothwellfigg.com
bthompson@rothwellfigg.com
bfishman@rothwellfigg.com

*Attorneys for Defendant DIRECTV, LLC*

[redacted]

## CERTIFICATE OF COMPLIANCE

I, Sharon L. Davis, hereby certify that this memorandum of law complies with the length restrictions in Local Civil Rule 7.1(c) and the Individual Practices in Civil Cases before Judge Analisa Torres.

I further certify that this memorandum of law contains 8,681 words, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Civil Rule 7.1(c) and Your Honor's Individual Practices. In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

*/s/Sharon L. Davis*

Sharon L. Davis