USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 
DATE FILED: 11/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADEIA INC., ADEIA MEDIA HOLDINGS INC., ADEIA MEDIA LLC, ADEIA GUIDES INC., ADEIA TECHNOLOGIES INC., and ADEIA MEDIA SOLUTIONS INC.,

Plaintiffs,

-against-

DIRECTV, LLC,

Defendant.

26 Civ. 238 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On November 12, 2026, by order filed temporarily under seal, the Court granted Defendant's motion to dismiss, *see* ECF No. 70, and directed the parties to "confer and jointly propose a redacted version of [the dismissal order] for public filing." Proposed Redacted Order at 12, ECF No. 240-1.

Both the undersigned and the Honorable Stewart D. Aaron have stated and applied the relevant legal standards for sealing in prior orders in this case. *See, e.g.,* ECF No. 161 at 4–13; ECF No. 93 at 4–9. Upon review of the proposed redactions, the Court concludes that the parties seek to redact the same limited categories of business information that the Court has previously held should be sealed. *See, e.g.,* ECF No. 93, at 7 (sealing information that could "provide the public an insight into both Adeia and DirecTV's licensing practices and contemplated business decisions"). Additionally, the redactions are minimal and "narrowly tailored" to avoid unduly interfering with the presumption of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Importantly, the redacted material is not necessary to the public's understanding of the Court's order. *See* ECF No. 240, at 2 ("[T]he substance of [the] Court's reasoning can be understood without the sensitive information the parties propose to redact."); *cf.* ECF No. 93, at 7.

Accordingly, the parties' request to seal certain portions of the dismissal order is GRANTED. The Court hereby publicly files the attached order in redacted form and maintains the unredacted version under seal, *see* ECF No. 234.

SO ORDERED.

Dated: November 24, 2026
New York, New York

ANALISA TORRES
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

[redacted]

ADEIA INC., ADEIA MEDIA HOLDINGS INC., ADEIA MEDIA LLC, ADEIA GUIDES INC., ADEIA TECHNOLOGIES INC., and ADEIA MEDIA SOLUTIONS INC.,

Plaintiffs,

-against-

DIRECTV, LLC,

Defendant.

26 Civ. 238 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, DIRECTV, LLC, moves to dismiss the trade secrets misappropriation claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, filed by Plaintiffs Adeia Inc., Adeia Media Holdings Inc., Adeia Media LLC, Adeia Guides Inc., Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively, "Adeia"). *See* Mem., ECF No. 74 (sealed), ECF No. 70 (redacted); *see also* Opp., ECF No. 112 (sealed), ECF No. 110 (redacted); Reply, ECF No. 116 (sealed), ECF No. 115 (redacted). For the reasons stated below, the motion is GRANTED.

**BACKGROUND**[1]

This action commenced on January 12, 2026, when Adeia, an entertainment technology company that owns and licenses over 13,000 patents, filed a two-count complaint against DIRECTV, a former licensee of certain Adeia patents, asserting claims for (1) breach of contract and (2) misappropriation of trade secrets under the DTSA. *See* Compl. ¶¶ 13–15, 20–21, 45–76,

[1] For the purposes of this motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in Adeia's favor. *See Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025). Citations to evidence from the record are for context only.

ECF No. 3.[2] The dispute arises out of a non-disclosure agreement ("NDA") dated April 10, 2025, which the parties executed when they were negotiating the terms of DIRECTV's potential renewal of its licenses to certain patents in Adeia's portfolio. *Id.* ¶¶ 22–24; *see also* NDA, ECF No. 26-2. The NDA prohibited both parties from using confidential information "for the purpose of, as the basis for, or in support of, any [l]egal [a]ction between the parties." Compl. ¶ 27; NDA § 6. Confidential information was defined in the NDA as "any information disclosed or made available by a party . . . under this Agreement . . . in furtherance of the [contemplated business transactions between the parties]," including [redacted]. NDA § 1; *see also* Compl. ¶ 26.

After the parties signed the NDA, Adeia emailed a PowerPoint presentation to DIRECTV that [redacted] *See* Compl. ¶¶ 30–32; ECF No. 26-3 (email); *see also* ECF No. 26-4 (presentation); ECF No. 26-5 ([redacted]). The [redacted]. *See* ECF No. 26-5. The PowerPoint slides and [redacted] are marked "Confidential." *Id.*; ECF No. 26-4; *see* Compl. ¶¶ 36–37. By letter dated September 17, 2025, DIRECTV's outside counsel responded, stating that its [redacted]. ECF No. 26-6 (letter); Compl. ¶¶ 34–37. The parties ultimately did not renew DIRECTV's license, which expired on December 31, 2025. Compl. ¶ 21.

[2] Permission to file the unredacted complaint under seal was granted at ECF No. 3 in *Adeia Inc. v. DIRECTV, LLC*, No. 26 Misc. 11 (S.D.N.Y. filed Jan. 8, 2026).

On December 29, 2025, DIRECTV filed a declaratory judgment action (the "DJ Action") in the Northern District of California. Compl. ¶ 24; *see DIRECTV, LLC v. Adeia, Inc.*, No. 25 Civ. 11048 (N.D. Cal. filed Dec. 29, 2025); *see also* DJ Action Complaint, ECF No. 72-1. In that action, DIRECTV sought declarations of non-infringement and invalidity for ten patents owned by Adeia. *See* Compl. ¶¶ 39, 43; DJ Action Complaint ¶ 1. [redacted]. *See* Compl. ¶¶ 39, 43. Adeia filed a motion to dismiss for lack of subject matter jurisdiction in the DJ Action on March 13, 2026. *See* Motion to Dismiss, *DIRECTV LLC*, No. 25 Civ. 11048, ECF No. 38. On October 6, 2026, the Honorable Jacqueline Scott Corley dismissed the DJ Action without prejudice. *See* Dismissal Order at 8–9, *DIRECTV LLC*, No. 25 Civ. 11048, ECF No. 71.

Adeia alleges that DIRECTV breached the NDA and misappropriated Adeia's trade secrets by filing the DJ Action. *See generally* Compl. Adeia previously asked the Court to enter a preliminary injunction prohibiting DIRECTV from continuing to pursue the DJ Action, *see* Compl. at 16, which the Court denied, finding no showing of irreparable harm. *See* ECF No. 93. DIRECTV now moves to dismiss Adeia's cause of action under the DTSA.

**LEGAL STANDARD**

I. <u>Motion to Dismiss</u>

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* (citation omitted). On a motion to dismiss, the Court "must draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II. Defend Trade Secrets Act

To state a claim for misappropriation under the DTSA, a plaintiff must allege (1) "that it possessed a trade secret," and (2) "that the defendant misappropriated" that secret. *Iacovacci v. Brevet Holdings*, *LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1836(b)(1)).

Under the DTSA, a trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as:

> [(1)] the owner thereof has taken reasonable measures to keep such information secret; and [(2)] the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

Courts in this Circuit[3] have considered the following factors to determine whether information constitutes a trade secret:

---

[3] Although *North Atlantic Instruments v. Haber*, 188 F.3d 38 (2d Cir. 1999), analyzes trade secrets under New York law, *see id.* at 44, the elements for a trade secret misappropriation claim under the DTSA and New York law "are

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) (citation omitted).

"These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015). Still, plaintiffs must "plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Medidata Sol., Inc. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018).

The misappropriation element of a DTSA claim is established by the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(B)(ii)(II).

## ANALYSIS

I. DTSA Claim

A. Secrecy

Adeia fails to adequately allege that its [redacted], are secrets for the purpose of the DTSA. In general, "[f]or a plaintiff to claim entitlement to trade secret protection, 'the subject matter of a trade secret must be

---

fundamentally the same." *Iacovacci*, 437 F. Supp. 3d at 380. As a result, "district courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." *ExpertConnect, L.L.C. v. Fowler*, No. 18 Civ. 4828, 2019 WL 3004161, at *4 n.1 (S.D.N.Y. July 10, 2019) (citations omitted).

secret.'" *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 258 (S.D.N.Y. 2021) (quoting *Speedry Chem. Prods., Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir. 1962)). Nonetheless, a "compilation of public information assembled through the application of some variety of non-public knowledge or expertise" may warrant trade secret protection. *Stone Point Advisory, LLC v. S&P Glob. Mkt. Intel., Inc.*, No. 25 Civ. 773, 2026 WL 866848, at *6 (S.D.N.Y. Mar. 30, 2026); *see also Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (noting that a "unique combination" of publicly available components may amount to a "protectable secret" (citation omitted)). Critically, however, a compilation of public information must be more than "merely difficult or arduous to assemble" to constitute a trade secret. *Stone Point Advisory, LLC*, 2026 WL 866848, at *6*; see also Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 196 (E.D.N.Y. 2017).

Adeia alleges that it "has spent significant resources in the form of time and money" and "invested hundreds of hours" to create the [redacted]. Compl. ¶ 47. Its efforts are one relevant consideration when assessing trade secret status. *See N. Atl. Instruments, Inc.*, 188 F.3d at 44. But the mere fact that developing these materials "may be an arduous task, involving . . . hundreds of hours . . . is not alone sufficient to confer protection under the DTSA." *Art & Cook, Inc.*, 416 F. Supp. 3d at 196 (internal quotation marks and citation omitted). Adeia must additionally allege "some variety of non-public knowledge or expertise," *Stone Point Advisory*, 2026 WL 866848, at *6, and it fails to do so.[4]

The Court does not hold that Adeia could never show that the [redacted] are protectable secrets. Indeed, certain factors weigh in Adeia's favor. In addition to

[4] Adeia gestures at non-public knowledge when it states that "even if someone could theoretically have similarly [redacted], it is not readily ascertainable that *Adeia* had internally reached" the views reflected in the [redacted]. Compl. ¶ 55. But Adeia does not show why the fact that it made these determinations, as opposed to the substance of those determinations, has value.

time spent on these materials, Adeia took significant "measures . . . to guard the secrecy" of the [redacted] by, for example, sharing them only pursuant to an NDA, maintaining them on secure servers, and limiting employees' access to them. *N. Atl. Instruments, Inc.*, 188 F.3d at 44; Compl. ¶¶ 57–58. And Adeia may be able to allege facts demonstrating that its process for developing the [redacted] involved "specialized knowledge," not just time and effort. *Webcraft Techs., Inc. v. McCaw*, 674 F. Supp. 1039, 1046 (S.D.N.Y. 1987). Its present allegations are, however, insufficient.

B. Independent Economic Value

Adeia similarly fails to allege that that the secrecy of the [redacted] generates independent economic value ("IEV"). As a threshold matter, the DTSA's definition of a trade secret requires that the information derives IEV from not being known to "*another person* who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3) (emphasis added). As such, Adeia must allege not only that keeping the [redacted] secret helps Adeia itself avoid costs "in the form of an avoided lawsuit and avoided litigation costs," Compl. ¶ 50, but also that other entities could derive value from accessing or using the Of-Interest Patent Materials. Adeia proffers multiple theories of IEV to satisfy that standard, but all fail to "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Adeia's first theory is that DIRECTV avoided costs by relying on the [redacted] when preparing its DJ Action. *See* Opp. at 9. Accepting as true that DIRECTV used the [redacted] in this way, DIRECTV will only obtain value from doing so if it

ultimately prevails in that action[5] —a prospect that, given DIRECTV's claims have been dismissed once already, is speculative at best. *See* Dismissal Order at 8–9, *DIRECTV, LLC*, 25 Civ. 11048; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Certain Underwriters at Lloyd's London v. Jupiter Managing Gen. Agency, Inc.*, No. 20 Civ. 1037, 2022 WL 1462757, at *2 (M.D. Tenn. May 9, 2022) (concluding DTSA plaintiff failed to show IEV because allegations of competitive advantage were "highly speculative"). The uncertain return on litigation distinguishes the [redacted] from more readily revenue-generating information, such as a customer list, that courts have held has IEV when its use would permit a defendant to avoid "substantial investment of time and resources" in recreating it from scratch. *loanDepot.com, LLC v. CrossCountry Mortg., LLC*, No. 22 Civ. 5971, 2023 WL 3884032, at *7 (S.D.N.Y. June 8, 2023); *see, e.g.*, *N. Atl. Instruments, Inc*, 188 F.3d at 46. Here, in contrast, "any value that could be derived from [using the [redacted] to prepare the DJ action] is contingent on additional factors," namely, the uncertain outcome of the DJ Action. *Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 666 (E.D. Tex. 2024), *aff'd*, No. 25-40194, 2026 WL 1346202 (5th Cir. May 14, 2026).

The same is true for Adeia's parallel theory that third parties other than DIRECTV could avoid costs by using the [redacted]. *See* Opp. at 13–17. Adeia argues that "[p]otential licensees, current licensees with licenses up for renewal, and short-sellers all have means and motive to attack

[5] Adeia alleges that, because "it would likely have been impossible for DIRECTV to arrive at [redacted]," DIRECTV "would not have" filed the same DJ Action if [redacted]. Opp. at 12. The Court, therefore, need not consider whether cost savings in preparing a potentially losing lawsuit, as compared to a more resource-intensive method of preparing the same lawsuit, establishes IEV. Rather, the comparison Adeia presents the Court is between cost savings in filing the DJ Action and not filing the DJ Action at all.

[redacted]." *Id.* at 15. But as in the litigation context, means and motive are not enough to provide those third parties with economic value. Rather, the value to third-parties is "contingent on"—and derives primarily from—the strength of [redacted]. *Providence Title Co.*, 732 F. Supp. 3d at 666.

Moreover, stretching the definition of IEV to encompass the [redacted] utility for litigation or [redacted] would have far-reaching consequences. DIRECTV correctly points out that Adeia effectively "use[s] the threat of trade secret misappropriation to insulate [redacted]." Reply at 9. As the Court noted when denying Adeia's motion for preliminary injunction, "a ruling for Adeia would force DIRECTV to wait indefinitely for Adeia to sue it, all the while accruing damages for patent infringement." Prelim. Inj. Order at 13, ECF No. 93 (quotation marks and citation omitted). Adeia cites no caselaw justifying the use of trade secret misappropriation as a shield against otherwise legitimate legal challenges. *See generally* Opp.

Adeia alleges additional theories of IEV that depend on entities using the [redacted] to gain a competitive advantage in dealings with Adeia. Specifically, Adeia claims: (1) that DIRECTV and others can derive value from "tying up [redacted] in litigation" because "entities engaging in licensing discussions discount immediate value of assets tied up in litigation"; and (2) industry participants can otherwise use the information to "negotiate a license on terms that are more favorable to the licensee," such as by "promot[ing] [redacted] less to suggest that those features are less valuable to their business and thus do not justify Adeia's requested licensing fee." Compl. ¶¶ 52–53. Adeia cites no authority holding that information has IEV when it would be

valuable only if the alleged misappropriator does business with the entity possessing the information, and a review of trade secret misappropriation caselaw indicates that value is generally assessed as to competitors, not contract counterparties. *See, e.g.*, *DFO Glob. Performance Com. Ltd. (Nev.) v. Nirmel*, No. 20 Civ. 6093, 2021 WL 3475596, at *20 (S.D.N.Y. Aug. 6, 2021) (holding that e-commerce data allowing a competitor to "bypass an expensive trial-and-error process" to optimize its business has IEV); *Kraus USA, Inc. v. Magarik*, No. 17 Civ. 6541, 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020); *cf. AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 337 (S.D.N.Y. 2024) (noting that the court was not aware of "any cases addressing whether . . . internal communications about an ongoing contract dispute with a counterparty are protectable as trade secrets," but nonetheless permitting amendment to allege such a claim).

The factors that the Second Circuit has instructed district courts to consider when assessing trade secret status, moreover, contemplate that trade secrets are valuable to "the business *and its competitors*," not to just to entities negotiating with the business. *N. Atl. Instruments*, *Inc.*, 188 F.3d at 44 (citation omitted) (emphasis added). Adeia again proffers an overbroad conception of IEV. Because of the adversarial nature of contract negotiations, virtually any internal business information could have value to a counterparty, and courts have not construed the DTSA so expansively.

Because Adeia fails to plausibly allege a trade secret with IEV, its DTSA claim must be dismissed.[6]

II. Supplemental Jurisdiction

[6] The Court does not reach DIRECTV's arguments that its DJ Action did not constitute misappropriation under the DSTA, Mem. at 24–25, and that the [redacted] are not related to a product or service used in, or intended for use in, interstate or foreign commerce, *id.* at 26–27.

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction, however, is "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). One such circumstance when a district court may decline supplemental jurisdiction is when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Here, the "values of judicial economy, convenience, fairness, and comity" weigh against the exercise of supplemental jurisdiction. *Cohill*, 484 U.S. at 350. Adeia's federal claims are being "eliminated on a motion to dismiss, prior to the investment of significant judicial resources," such that there is no judicial economy, convenience, or fairness interest in considering Adeia's state law claim notwithstanding the dismissal of its federal cause of action.

*Kolari*, 455 F.3d at 123; *see also id.* at 123 n.6 (collecting cases and explaining that "judicial resources expended . . . justify pendent or supplemental jurisdiction" when, for example, cases are completely trial-ready). Although Adeia points to the "important federal policy of the patent system" to justify the exercise of supplemental jurisdiction, Opp. at 23, Adeia's breach of contract claim is not so "closely tied to questions" involving the patent system as to render this action "one of the rare cases where retaining jurisdiction would be appropriate." *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988); *see also Kolari*, 455 F.3d at 122–23 (holding that district court abused its discretion by exercising supplemental jurisdiction based on unexplained "federal health care policy" interest). The Court, therefore, dismisses Adeia's breach of contract claim without prejudice to renewal in state court.

**CONCLUSION**

For the reasons stated above, DIRECTV's motion to dismiss Adeia's DTSA claim is GRANTED. The Court further declines to exercise supplemental jurisdiction over Adeia's state law breach of contract claim and, accordingly, dismisses that cause of action. Dismissal of Adeia's breach of contract claim is without prejudice to renewal in state court.

By **December 14, 2026**, Adeia may file an amended complaint. If Adeia fails to amend its complaint by that date, the dismissal of its DTSA claim shall operate with prejudice.

By **November 23, 2026**, the parties shall confer and jointly propose a redacted version of this Order for public filing.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 70.

SO ORDERED.

Dated: November 12, 2026
New York, New York

ANALISA TORRES
United States District Judge